**Bloneva ATKINS**

v.

**UNITED STATES of America.**

No. 16189.

United States Court of Appeals
Fifth Circuit.

Feb. 13, 1957.

Rehearing Denied March 14, 1957.

Zach H. Douglas, Jacksonville, Fla., James L. Guilmartin, U. S. Atty., Miami, Fla., E. Coleman Madsen, Asst. U. S. Atty., Jacksonville, Fla., T. David Burns, Jacksonville, Fla., for appellant.

E. Coleman Madsen, Asst. U. S. Atty., Jacksonville, Fla., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellee.

Before RIVES, TUTTLE and JOHN R. BROWN, Circuit Judges.

RIVES, Circuit Judge.

Appellant was convicted of possessing ten gallons of distilled spirits in a container which did not have affixed a revenue stamp in violation of § 2803(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 2803(a), and of concealing said ten gallons of spirits with intent to defraud the United States in violation of § 3321(a) of said Internal Revenue Code, 26 U.S.C.A. § 3321.(a), and was sentenced to imprisonment for one year and one day. There were only two witnesses, and, with one minor correction, the Government accepts the appellant's statement of their testimony.[1]

---

1. The testimony of the two witnesses is thus summarized in appellant's brief:

"Russell E. Smith testified for the Government that he had been an investigator for the Internal Revenue Department for 27 years. That he saw Defendant on June 18, 1954 at 820-822 Tyler Street, Jacksonville, that she was seated inside the door and that she locked the inside door when informed that he, Smith, had a search warrant, that he forced his way inside and then saw Defendant behind the counter pouring kerosene from a jug into a 20 gallon barrel, that he skimmed off some kerosene from the top of the barrel and determined that moonshine was underneath. Witness Smith then examined two bottles handed him by the prosecution and after smelling each said one contained kerosene and the other moonshine. The Court then asked if he labeled the bottles at the time and the Government then told the Court that these were not samples taken at the time, that no sample was saved, that this is for another purpose. The Government then introduced the two bottles of liquid into evidence as Government's Exhibits One and Two to which Defendant objected on the ground that they were not samples taken at the time which objection was overruled.

The Government then passed the bottles to the jury and after the jury inspection mixed some of the liquid from each bottle in a glass and passed it to the jury.

The appellant urges that the district court erred: (1) in denying her motion for judgment of acquittal, Rule 29, F.R.Crim.Proc., 18 U.S.C.A.; (2) in permitting the Government to introduce into evidence the bottle of kerosene and the bottle of moonshine, and to perform a demonstration or experiment with same in the presence of the jury; (3) in declining to permit the defendant to conduct a demonstration with different material (ammonia) to test the credibility of the Government's witnesses; (4) in permitting the two witnesses to testify as experts as to the contents of the wooden barrel without requiring some of such contents to be produced or proving the impossibility of such production; and (5) in its charge to the jury concerning how search warrants are obtained.

 (1) The motion for judgment of acquittal was on the grounds that the evidence was insufficient to establish (a) "possession" [2] required by § 2803(a) on the part of the defendant, (b) "concealment" [3] required by § 3321(a), and (c) that the internal revenue stamps were

not affixed to the barrel containing the spirits. The defendant's act of pouring kerosene into the liquor and thereby utterly destroying its palatability was certainly an exercise of such dominion and control over it as could have attached only to lawful ownership. As to "concealment", we agree with the reasoning of the learned district judge.[4] As to the stamps,[5] while the witness Smith testified merely that he did not notice any stamps affixed to the wooden barrel, the witness Schnorr was more positive:

"Q. Were there any stamps affixed to the barrel that contained this moonshine that you were—

"A. No, sir."

We conclude that the court properly denied defendant's motion for judgment of acquittal.

 (2) and (3) Upon the introduction of the bottle of kerosene and the bottle of moonshine and the subsequent mixture of the kerosene and moonshine, the court limited the purpose of such evidence to demonstrating the difference

---

Mr. Smith testified he did not notice any stamps on the wooden barrel and that he saved about 1 pint of the liquid from the barrel and brought it to the office and dumped the rest in the gutter, that he did not send it off.

On cross examination Witness Smith admitted that the mixture in the glass wasn't similar to that in the barrel, that looking straight down into the glass he couldn't tell whether a skim was on top or whether there were two liquids of different consistencies, that he did not taste the liquid in the barrel, that he trusted his sense of smell and feel, that moonshine has a certain feel, that he was accustomed to a smooth feel not like water, slightly oily. That the bottle he saved was sent to a chemist in Atlanta, Georgia as far as he knew.

G. W. Schnorr then testified for the Government that he was formerly connected with the State Beverage Department, that he assisted in a search at 820-822 Tyler in June, 1954, where he saw Defendant, that Mr. Smith showed him a 20 gallon open barrel that had shine with kerosene on it, that he followed Smith into the building immediately but saw Defendant doing nothing, that Smith scooped off the kerosene and then he

could smell moonshine in the barrel, that there were no stamps on the barrel. The Government then rested its case."

The only correction pointed out by the Government is as follows:

"Investigator Smith stated on cross-examination that the mixture in the glass did not look like the mixture he saw in the barrel on the day of the raid, stating the glass was transparent and the barrel was not."

**2.** See United States v. Hodorowicz, 7 Cir., 105 F.2d 218, 220, and other cases collected by Judge Brown in Barfield v. United States, 5 Cir., 229 F.2d 936, 942, note 4.

**3.** See United States v. Woods, 7 Cir., 168 F.2d 255, 257.

**4.** "You do not have to prove a hiding of it. The testimony here shows that it was behind that counter where it could not be seen, and the jury may conclude that that was a concealing of it, except selling. I think there is enough evidence on concealment."
See United States v. Woods, supra.

**5.** Compare United States v. Woods, supra, indicating that this exception is a matter of affirmative defense.

in smell of the two liquids, and that, when mixed, the kerosene floats on top. In admitting the evidence for such limited purpose, there was no abuse of the wide discretion vested in the trial court.[6] Nor did the court abuse its discretion in declining to permit the defendant to conduct a similar experiment or demonstration with ammonia, whose properties presumably were entirely different from either the moonshine liquor or the kerosene.

■ (4) If the objection and insistence had been timely made, it may be that the two Government witnesses should not have been permitted to testify as to the contents of the wooden barrel without requiring some of such contents to be produced or proof of a proper excuse for its nonproduction.[7] There was, however, no objection to the introduction of such evidence, and the point is raised only by motion to exclude.[8] We agree with the statement of the rule by the Sixth Circuit in Metcalf v. United States, 195 F.2d 213, 216:

"It is the well settled rule that objections to evidence should be timely made when the evidence is offered, and that it is within the discretion of the trial judge to sustain or overrule a motion, delayed until the close of the Government's case, to strike from the consideration of the jury evidence previously received without objection."

(5) In the course of its charge to the jury, the Court said:

"* * * you have the testimony to begin with of this agent of long experience, that a search warrant was obtained. No question was raised about that or any details gone into by either the Government or the defendant as to just how that search warrant was obtained. You usually have to get those things based upon an affidavit that has been made by somebody who gives such evidence that it will justify a Justice of the Peace or Commissioner of the Federal Court on that sworn testimony of issuing a search warrant, because in this country we just don't go in and break down doors and go into people's places of business or in their homes or what-not and search. You must have some reasonable basis upon which that search is made.

"Therefore, the law says you must do that with a search warrant that has been issued by some officer, like a Justice of the Peace, United States Commissioner, or United States Judge, before you can go in and break down doors in such premises.

"But when you are armed with such a search warrant as to which there is no question, and you are convinced that it exists and a search was made there, then I tell you the search was legal even to the extent of having to break down doors to get in there, because otherwise if you could not do that, there would be many instances in which the law could be thwarted absolutely.

"The Government contends it held a search warrant, it was made by an officer who had the authority under the statute itself to make the search, and that when he attempted to and notified her that he was a Federal Officer and had a search warrant, then it was her duty to permit him to make the search and not

---

6. Rule 26, F.R.Crim.Proc.; White v. Holderby, 5 Cir., 192 F.2d 722, 726; Goodall v. United States, D.C.Cir., 86 U.S.App. D.C. 148, 180 F.2d 397, 402, 17 A.L.R.2d 1070; 4 Wigmore on Evidence, 3rd ed., §§ 1159, 1160; 23 C.J.S., Criminal Law, § 967.

7. Watson v. United States, 5 Cir., 224 F. 2d 910, 912.

8. "The Court: That is what you are urging now, it was not the best evidence, and if you had made that objection I would have asked the District Attorney then and there, why aren't you producing the original contents of that barrel.
"Mr. Burns: Your Honor, I now move that all testimony be stricken and the best evidence be produced.
"The Court: You cannot wait until the case is closed, young man."

force him to break down the doors or things of that kind."

 At the conclusion of the charge, the defendant's counsel objected, assigning only one ground of objection:

"Mr. Burns: For the purpose of the record, Your Honor, the defendant would like to object to the Court's remarks dealing with a search warrant and what is generally done, as not being in evidence in this case."

That ground of lack of evidence as to the search warrant and search was not well taken.[9] Moreover, the charge related mostly not to the evidence, but to the legal necessity of a proper showing of probable cause for the issuance of a search warrant. See Fourth Amendment. It was, of course, necessary that the grounds for the objection to the charge be properly assigned, so that any error might be corrected.[10] When the court had adequately charged on burden of proof and presumption of innocence as it had in this case,[11] the complaint that no charge was given as to the indictment or the search warrant being merely an accusation is not fatal in the absence of proper objections or request for such instruction.[12] In the present case there was no conflict in the testimony of the two Government witnesses, and the defendant introduced no witnesses. If there was an error in the charge, it was far from a plain error which might be noticed though not brought to the attention of the court, and was at most an error which did not affect substantial rights of the defendant, and should therefore be disregarded. Rule 52, F.R.Crim.Proc.

Finding no reversible error in the record, the judgment is

Affirmed.

9. The witness Smith testified:
 "A. She was seated just inside the door of the store part, but I was talking to her through a small hall and a screen door. The screen door was locked on the outside and the door between the hall and the store part was open, and she was seated there. I told her that I had a Federal Search Warrant, that she shouldn't dump the whiskey but open the door and let me in.
 "Q. Were you able to see what this defendant was doing while you were talking to her through the screen?
 "A. She rushed right on to the door, the inside door, which is the door between the store and the hall and that was a solid door and closed it and bolted it on the inside.
 "Q. How did you gain entrance to the building?
 "A. I forced the screen door into the little hall and had to knock a panel out of the inside door, reach my hand in and unbolt the door."
 The witness Schnorr testified:
 "Q. Do you know how he got into the building?
 "A. With a Federal search warrant.
 "Q. Well, what did he have to do to get in?
 "A. When he come up to—when he made an attempt to enter the premises, the screen door from the street was latched and this person, who was identified here later as Bloneva Atkins, was informed by Federal Officer Smith that he was a Federal Officer and had a search warrant.
 "Q. Did you see what the defendant did after that?
 "A. The defendant closed the door and went back in the building.
 "Q. Then what happened, Mr. Schnorr?
 "A. Federal Officer Smith pulled the screen door open and entered a hall, which was a panel door leading off this hall. Officer Smith pushed the panel in and unlached the door from the inside."

10. Rule 51, F.R.Crim.Proc.; Eastman v. United States, 8 Cir., 153 F.2d 80, 84; United States v. Daily, 7 Cir., 139 F.2d 7, 9.

11. "The trial opens, the defendant has the presumption of innocence which stays with her throughout the trial. In other words, she does not have to offer anything. If the Government failed to offer any evidence, that would be the end of it, or if the evidence offered by the Government is insufficient to convince you beyond a reasonable doubt that she is guilty, then you should render a verdict of not guilty. That is the rule, the presumption of innocence. The burden is upon the Government to prove her guilty beyond a reasonable doubt."

12. United States v. Capitol Meats, 2 Cir., 166 F.2d 537, 539.