Mack **DANIEL** and **Ab Daniel,**
Appellants,

v.

**UNITED STATES** of America,
Appellee.

No. 17578.

United States Court of Appeals
Fifth Circuit.

June 30, 1959.

J. Sewell Elliott, Macon, Ga., for appellants.

Floyd M. Buford, Macon, Ga., Frank O. Evans, U. S. Atty., Macon, Ga., for appellee.

Before JONES and BROWN, Circuit Judges, and WRIGHT, District Judge.

J. SKELLY WRIGHT, District Judge.

Appellants, Mack and Ab Daniel, were convicted in one count of an indictment with possession of non-tax-paid whiskey. In another count, Mack Daniel was convicted with selling non-tax-paid whiskey. Pending this appeal Ab Daniel died. Since a criminal prosecution abates ab initio upon the death of an appellant,[1] only Mack Daniel's appeal will be considered.

The evidence shows that on January 24, 1958 Abernathy, a federal Alcohol and Tobacco Tax Unit agent, accompanied by the informant, Gordy, purchased twelve gallons of moonshine whiskey from Mack Daniel for $48.00. The whiskey was obtained by Daniel from the woods not far from his house. On January 26th, Abernathy, again accompanied by Gordy, purchased twenty-five gallons of moonshine whiskey from Mack Daniel for $100.00. Again the whiskey was obtained by Daniel from the woods near his house. Mack Daniel denied the transactions and, through the testimony of various witnesses, offered an alibi. The jury, on substantial evidence, rejected the alibi and convicted Mack Daniel of the offenses charged in the indictment.

Since the evidence was clearly sufficient to support this conviction, the trial court properly held that the defendant's motion for judgment of acquittal was without merit. The defendant, however, charges the trial court with several other errors, each of which he claims requires reversal of his conviction. We shall consider these charges in the order in which they are alleged in appellant's specification of error.

During the trial a doctor testified for the defendant Ab Daniel to the effect that Ab Daniel was suffering from a serious heart condition, that his physical condition was such that he could not perform the acts he is alleged by the Government to have performed in the commission of the offense with which he was charged, and that this same physical condition prevented him from testifying as a witness in his own behalf. The Government, in order to meet this testimony, moved the Court to have Ab Daniel examined by a doctor chosen by the Government. Overruling the opposition of his counsel, the Court ordered Ab Daniel taken into custody by the Marshal and brought to a doctor for examination. This doctor subsequently testified for the Government to the effect that Ab Daniel was indeed able to perform the acts alleged and that, moreover, he could testify in his own defense, including cross-

1. Melrose Distillers, Inc. v. United States, 359 U.S. 271, 79 S.Ct. 763, 3 L.Ed.2d 800; Howard v. Wilbur, 6 Cir., 166 F.2d 884; United States v. Mook, 2 Cir., 125 F.2d 706; Baldwin v. United States, 9 Cir., 72 F.2d 810.

examination, without seriously endangering his life. Ab Daniel did not take the stand.

Appellants spend the greater part of their brief on this point, the brief having been written before the death of Ab Daniel. Without in any way passing upon the propriety of the Court's order arresting Ab Daniel, having him examined,[2] and allowing the doctor to testify for the Government over his objection, suffice it to say that as far as Mack Daniel is concerned, whose appeal is the only one pending, the Court's action had no bearing on his case. In fact, the point was not argued on behalf of Mack Daniel in the brief. In a supplemental brief, filed after the death of Ab, counsel suggests that because Ab and Mack were brothers, this action on the part of the Court could have in some way adversely affected Mack. There is no merit in this suggestion. The jury was not apprised of the Court's order and the testimony given by the doctor called by the Government related to Ab and Ab alone. The issue is totally without relevance to Mack Daniel who testified fully in his own behalf.

The defense asserts that the Court also erred in denying its motion for a mistrial based upon the prosecuting attorney's reading into the record testimony already ruled inadmissible. At a previous trial of this case, which ended in a mistrial, the testimony of one Howard Snelson was taken as a witness for the defense. Snelson was not available at the time of the second trial and the defense was allowed to read this testimony into the record. After the direct testimony of the witness had been read by defense counsel, the district attorney read the cross-examination. After the reading of the entire testimony of Snelson taken at the former trial was concluded, defense counsel moved for a mistrial on the ground that the district attorney had read into the record certain questions and answers which the Court at the former trial had ruled inadmissible. The questions dealt with the presence of a still behind Mack Daniel's house, the witness denying any knowledge whatever thereof.[3]

The defendant first suggested before the trial court that the conduct of the district attorney was reprehensible in reading into the record testimony he knew had already been ruled inadmissible. When it was shown that the Court's ruling on the admissibility of testimony appeared, not on the page from which the district attorney had been reading,

---

2. Compare Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448; Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021; Blackford v. United States, 9 Cir., 247 F.2d 745; Smith v. United States, 88 U.S.App.D.C. 80, 187 F.2d 192; Swingle v. United States, 10 Cir., 151 F.2d 512; McFarland v. United States, 80 U.S.App.D.C. 196, 150 F.2d 593; Bratcher v. United States, 4 Cir., 149 F.2d 742; United States v. Kelly, 2 Cir., 55 F.2d 67, 83 A.L.R. 122; Haywood v. United States, 7 Cir., 268 F. 795, and United States v. Nesmith, D.C., 121 F. Supp. 758, with Rochin v. People of State of California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183; Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; and United States v. Townsend, D.C., 151 F.Supp. 378.

3. The relevant portion of the testimony reads as follows: (Prosecuting attorney, reading from the transcript of the earlier trial)

"Q. And what was the nature of this conversation you had with Mr. Daniel? What all did you discuss? A. Well, mostly he just asked me would I go to Atlanta with him to get a job, and I told him I was still working there.

"Q. Did he tell you anything about his still down there behind his house? A. I didn't know nothing about that.

"Q. He never did discuss that still he had there back of the house? A. No, sir.

"Q. You all didn't talk about that? A. No, sir.

"Mr. Adams: There's been no evidence that there was a still back of the house, if Your Honor please.

"Mr. Buford: I'll withdraw the question.

"By the Court: Sustain the objection. Pay no attention to the last question and answer, Gentlemen of the Jury." (Tr. 141, 142.)

but on the next page, counsel nevertheless contended, and still contends, that, intentionally done or not, the damage was the same.

■■■ The Government argues with considerable force that the testimony, although inadmissible on the first trial, was admissible on the second because there had been in fact some testimony at the second trial with respect to a still near Mack Daniel's house, a still in the woods from which the liquor purchased in this case was obtained. But it is not necessary to rule on whether or not the testimony was admissible in the second trial. The transcript which was read to the jury showed that the testimony was ruled inadmissible at the time of the first trial. That ruling, and the instruction of the Court telling the jury to disregard the testimony, was read to the jury at the second trial. Later, after the reading of the entire testimony was concluded, and the motion for mistrial was made, the district court again admonished the jury to disregard the testimony. The jury, no evidence indicating otherwise, is presumed to have complied with the Court's instruction.[4] Moreover, counsel for the defendant was apparently satisfied to have the entire colloquy read to the jury because no objection was made either before or immediately after it was read. Counsel waited until the entire testimony was concluded before moving for mistrial based on the reading. Such motion came too late. If counsel wanted the colloquy excluded, he should have moved before it was read. Actually the facts of this case demonstrate that the testimony was harmless,[5] even if objectionable. On both occasions when the liquor was bought from Mack Daniel, he went in the woods less than one mile from his house to get it and came out with it. Whether he obtained it from a still or merely from a hiding place was of no moment to the prosecution. Mack was convicted, not of operating a still, but of selling and possessing moonshine whiskey.

The defendant's attack on the Court's charge is five-fold. On cross-examination, Mack Daniel admitted that he was convicted of a liquor violation in 1946. No special request for a charge was submitted to the Court covering this testimony. After the Court had completed its charge, counsel excepted on the ground that the defendant's prior conviction was "so remote in point of time that it takes it without the rule stated to the jury" with respect to impeachment.

■■■ When a defendant takes the stand in his own defense he may be examined as any other witness. His credibility may be attacked by showing prior conviction of a felony.[6] If counsel thought that Daniel's conviction was so remote in time that it had no value by way of impeachment, he should have objected to the question when asked.[7] At that time he apparently thought otherwise because there was no objection. Once the evidence is before the jury it becomes the jury's function to determine what weight, if any, it will give to a prior conviction as impeachment. No special charge on remoteness was required. And if counsel felt that one

4. Pennsylvania Company v. Roy, 102 U.S. 451, 26 L.Ed. 141; Texas and Pacific Railway Company v. Buckles, 5 Cir., 232 F.2d 257; Hazeltine v. Johnson, 9 Cir., 92 F.2d 866; Knuckles v. Weathersby, 63 App.D.C. 276, 72 F.2d 69; Kuhn v. United States, 9 Cir., 24 F.2d 910; Lazier Gas Engine Co. v. Du Bois, 3 Cir., 130 F. 834.

5. Fed.R.Crim.P. 52(a), 18 U.S.C.A.

6. Roberson v. United States, 5 Cir., 249 F.2d 737; Steele v. United States, 5 Cir.,

243 F.2d 712; Newman v. United States, 5 Cir., 220 F.2d 289; Matthews v. United States, 5 Cir., 145 F.2d 823.

7. Fed.R.Crim.P. 51; Butler v. United States, 5 Cir., 254 F.2d 875; Brennan v. United States, 8 Cir., 240 F.2d 253; Atkins v. United States, 5 Cir., 240 F.2d 849; Byars v. United States, 6 Cir., 238 F.2d 82; Skiskowski v. United States, 81 U.S.App.D.C. 274, 158 F.2d 177; United States v. Lutz, 3 Cir., 142 F.2d 985; Shaw v. United States, 8 Cir., 1 F.2d 199.

was, he should have prepared and submitted it.[8]

■ Defendant excepted to that part of the Court's charge which instructed the jury to disregard the fact that there had been a prior trial. The jury was well aware that there had been a prior trial. Throughout the case counsel for both sides referred to it. It was necessary, therefore, for the Court to make certain that the jury was not in the dark as to its duty respecting the mistrial, that the jury draw no inference from the mistrial. The jury was forcefully and clearly instructed to disregard the fact that the case had been previously tried, to give that fact no consideration whatever in determining the guilt or innocence of the defendants on trial. How the Court's charge in this regard prejudiced the defendant is difficult to understand. The fact that some prior jury may have disagreed as to the guilt or innocence of the accused may itself raise a reasonable doubt in the mind of the jury. Moreover, after counsel's exception the Court re-charged the jury with reference to the prior mistrial, attempting to meet the exceptions raised by the defendant. No exception was taken to the supplemental charge.

■ The next exception to the Court's charge was also cured by the supplemental charge. Originally the Court had charged the jury that only the jury and itself were nonpartisan with reference to the matter on trial. In the supplemental charge the Court met the exception of the defendant by retracting that language. Again no exception was taken to the supplemental charge.

■ The defendant also complains that "The court cautioned the jury three times against any emotion, pity, sympathy or other similar sentiments," that it imposed "an impossible mathematical burden" upon the jurors by telling them that theirs was a "purely intellectual function," that a jury brings to the decision of a lawsuit, particularly a criminal case, human experience, of which no amount of instruction could, or should, divest them, or keep them from applying in arriving at a verdict.

It is true that the great genius of the jury system is the human experience which only a jury can bring to bear on the essentially human problems which a jury is required to decide. Perhaps some judges are capable of purely intellectual judgments. Jurors, being human, cannot disassociate their experience from their judgments. The Court's charge, however, read as a whole as we are required to read it,[9] did not require the jury to decide the case in a vacuum without the benefit of human emotions or human experience. Admonitions against prejudice and sympathy are part of the boiler plate of a criminal charge.[10] It is true that the Court did use the word "intellectual." It is also true that the word "intellectual" has recently fallen

8. Fed.R.Crim.P. 30; Apel v. United States, 8 Cir., 247 F.2d 277; Gicinto v. United States, 8 Cir., 212 F.2d 8; Stassi v. United States, 8 Cir., 50 F.2d 526, 527–530.

9. Bennett v. United States, 10 Cir., 252 F.2d 97; Bary v. United States, 10 Cir., 248 F.2d 201; Segal v. United States, 8 Cir., 246 F.2d 814; Shaw v. United States, 9 Cir., 244 F.2d 930; Haskell v. United States, 10 Cir., 241 F.2d 790; Benatar v. United States, 9 Cir., 209 F.2d 734; Moffitt v. United States, 10 Cir., 154 F.2d 402; 23 C.J.S. Criminal Law §§ 1319, 1321; Blashfield, Instructions to Juries § 383.

10. "It is the duty of the court to caution the jury against prejudice and sympathy wherever the circumstances demand it. And so, where the trial judge deems it proper, he may caution the jury not to be swayed by sympathy, prejudice, or passion, and direct them to be governed in their finding by the facts as they exist without regard to the results that may follow therefrom. * * * Such instructions are not subject to the objection that they constitute a charge on the facts, or that they deny to jurors the right to exercise their common sense, or their duty to weigh testimony in the light of facts or principles, or rules settled or recognized by their own experience. * * *" 53 Am.Jur., Trial § 822. To the same effect, see 88 C.J.S. Trial § 320b.

into some disfavor. So much so that, in some quarters, it has become synonymous with the derisive epithet "egghead," describing a person whose feet are not quite touching the ground, whose lucubrations are detached from the affairs of men. If such were the meaning of the word, or if such were the construction placed upon it by the jury, there might be some basis for the defendant's complaint. In the context in which the word was used in the charge, however, it appears that the Court was merely making appropriate entreaties that the jury examine the facts before them as objectively as possible.

Finally, the defendant argues that the Court's charge was strongly and argumentatively slanted in favor of the prosecution. We do not agree. The charge was full and fair. It was the evidence that was strong.

Affirmed.