**Charles Moses HEAD, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19878.**

United States Court of Appeals Ninth Circuit.

June 2, 1965.

---

HAMLEY, Circuit Judge.

Charles Moses Head was tried, convicted on a jury verdict, and sentenced on three counts of an indictment charging violations of the White Slave Traffic Act, 18 U.S.C. § 2421. Head appeals, contending that the trial court erred in admitting certain evidence and in denying a motion for mistrial because of the admission of that evidence.

The first count under which Head was convicted involves the alleged transportation of a named woman from Seattle, Washington, to Pocatello, Idaho, on July 5, 1963. The second count involves the alleged transportation of another named woman from Phoenix, Arizona, to Seattle, Washington, on August 24, 1963. The third count involves the alleged transportation of a third named woman from Portland, Oregon, to Seattle, Washington, on September 14, 1964.

The evidence which, Head asserts, should not have been admitted pertains to an incident involving Head and the woman named in the third count, which occurred at Salt Lake City, Utah, on September 11, 1964. This was three days prior to the act of transportation alleged in the third count, and at a place not involved in the alleged transportation.

The woman in question, testifying as a witness for the Government, stated that on September 11th, she was at the Regal Bar, in Salt Lake City, Utah, while "on run" from a Minnesota correctional school. There she met Head for the first time and, being desirous of going to Reno, Nevada, to see a friend, arranged to go there the next day with Head and the latter's wife. She testified that Head told her he would get her a hotel or motel room and pick her up the next morning. She then gave the testimony, quoted in the margin, to which appellant objects.[1]

Stephen E. DeForest, Seattle, Wash., for appellant.

Wm. N. Goodwin, U. S. Atty., Ronald G. Neubauer, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before HAMLEY and JERTBERG, Circuit Judges, and MATHES, District Judge.

1. "A At the time he took me to the Desert Inn Motel and he came in with me. Q What happened then? A Well, I thought he was going to leave but he didn't. Q What happened in the motel room? A Well, first, it was just conversation and then he wanted me to go to bed with him. Q What happened then? A Well, then, of course I refused. Q What did he say or do? A He forced himself upon me. Q Did you have sexual relations with Mr. Head? A I did.

After this testimony had been received, the trial court interrupted to suggest that the Government get on to the matter of transportation. This was done. At a later point in the testimony of this witness, Government counsel asked her if she had sexual relations with Head in Portland prior to going to Seattle. Counsel for Head objected and a recess was taken. A motion for a mistrial was then made on the ground that the testimony received concerning what occurred at Salt Lake City amounted to a charge of statutory rape and was so prejudicial that Head could no longer have a fair trial.

The court denied the motion for a mistrial. Government counsel indicated that he desired to renew, in the presence of the jury, the question as to sexual relations between Head and this woman at Portland, Oregon. The court expressed the view that such evidence would be admissible. However, believing that this evidence was not needed by the prosecution and that it might possibly be deemed so prejudicial as to lead to reversal of a conviction, the court sustained the objection to the question. Counsel for the Government was permitted to make an offer of proof and demonstrated that the witness would have given an affirmative answer to the question concerning the Portland incident.

■ The sentence imposed under the third count was concurrent to that imposed under the first count. It follows that if Head's contention referred to above is deemed an attack only upon his conviction on that count, it is harmless error and need not be considered. See Sinclair v. United States, 279 U.S. 263, 299, 49 S.Ct. 268, 73 L.Ed. 692; Brothers v. United States, 9 Cir., 328 F.2d 151, 157. But Head contends that the assert-

ed error was of such a prejudicial nature that it infected the entire trial and deprived him of a fair trial on the other counts.

■ Trial counsel for Head made no objection to the questions which elicited the testimony now challenged. As indicated by the portion of the record quoted in note 1, he waited until the testimony was thoroughly developed and then, having taken no previous objection, moved for a mistrial. It is questionable whether, under these circumstances, Head is entitled to raise the question on appeal. See Daniel v. United States, 5 Cir., 268 F.2d 849, 852. While we will nevertheless, in the exercise of our discretion, consider the question, this should not be taken as an indication that this court will always overlook this manner of proceeding.

In his brief on this appeal Head concedes that had the third count of the indictment charged the transportation of the woman there named "to enjoy her favors" evidence of the Utah rape would have been competent. He argues, however, that such evidence is not relevant to the charge actually made in that count because it does not rationally tend to prove that Head intended to transport that woman for the purpose of prostitution.

As the Government points out in its brief, the major premise of Head's argument is without foundation, since the third count, as well as the other two counts charged that the transportation was not only for the purpose of prostitution, but also for " * * * debauchery, and other immoral purposes."

Counsel for Head took a new tack at the oral argument. He there contended that, whatever was charged in the indictment, the theory of the Government's

Q How old were you at this time? A Fifteen. Q What happened after that?

"MR. ALFIERI: Your Honor, before we go any further I would like to make a motion out of the presence of the jury.

"THE COURT: It can not wait until noontime?

"MR. ALFIERI: Well, if I can reserve my motion without waiving anything.

"THE COURT: Yes.

"By Mr. Neubauer:

"Q (Continuing) What happened then? A Well, he made me do some different things that I had never done before."

 

case, from its opening statement to the close of the trial, was limited to the prostitution purpose. Examination of the record disproves this assertion.[2]

The testimony in question concerning the Salt Lake City incident, is relevant to the charge, and to the consistent theory of the Government's case, that Head transported the three women for the purpose of debauchery and other immoral purposes, as well as for the purpose of prostitution. It is relevant because it tends to show that, having had this one experience with the woman in question, one of his purposes in later transporting her from Portland to Seattle was to have additional experiences of this kind. As the trial court correctly instructed the jury, without objection, it was not necessary for the Government to prove that such a purpose was accomplished.

The rule pertaining to the admissibility of evidence of a distinct offense unconnected with that charged in the indictment, is set out in Fernandez v. United States, 9 Cir., 329 F.2d 899, 907–908. In view of the circumstances described above, the trial court did not depart from that rule in any respect. See, also, Stewart v. United States, 9 Cir., 311 F.2d 109, 112.

Affirmed.

---

2. In his opening statement counsel for the Government told the jury that Head was charged with transporting three girls " * * * for the purpose of prostitution, debauchery and other immoral purposes." Later in that statement, he told the jury that the Government's witnesses would testify " * * * as to the tale of servitude and sexual and financial gratification of the Defendant, * * *." During the course of the trial, the woman named in the first count testified, without objection, that on the way from Seattle to Pocatello, via Moses Lake, Washington, and Portland, Oregon, she and Head stopped and, at his insistence had sexual relations.

In his closing argument after the evidence was all in, counsel for the Government told the jury that, with regard to the third count, the issue before them was whether Head took the woman in question to Seattle " * * * for the purpose of prostitution, debauchery or other immoral practices." In this argument, counsel for the Government also asserted that Head is "guilty as charged." In his argument to the jury, trial counsel for Head reminded the jury that Head was charged with three specific violations of the Mann Act, " * * * the interstate transportation of a female for an immoral purpose." Later he told the jury that the Government had failed to prove that, on the three different occasions, Head " * * * transported women for immoral purposes."

In the rebuttal part of his closing argument to the jury, counsel for the Government told the jury that they were to find, or not find, that Head took the three girls across the state lines " * * * for the purpose of debauchery, prostitution and other immoral practices." In its instructions to the jury at the close of the case, the trial court called attention to the charges contained in the indictment, including the allegation that the transportation was " * * * for the purpose of prostitution, debauchery, and other immoral purposes." The court also advised the jury that the statute covered all of these purposes, and that the offense involved is crossing the state line for "immoral purposes." Counsel for Head took no objection to any instruction.