# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, FEBBO, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant ANGEL M. SANCHEZ**
**United States Army, Appellant**

ARMY 20140735

Headquarters, U.S. Army Maneuver Support Center of Excellence
Jeffery R. Nance, Military Judge
Colonel Robert F. Resnick, Staff Judge Advocate (pretrial)
Colonel Charles T. Kirchmaier, Staff Judge Advocate (post-trial)

For Appellant:  Lieutenant Colonel Jonathan F. Potter, JA; Captain Amanda R. McNeil Williams, JA; Mr. Michael J. Millios, Esquire (on brief); Captain Michael A. Gold, JA; Mr. Michael J. Millios, Esquire (on reply brief and on reply brief in response to specified issue).

For Appellee:  Major Cormac M. Smith, JA; Captain John Gardella, JA (on brief and brief in response to specified issue).

17 July 2017

-------------------------------------------------------------------
MEMORANDUM OPINION ON RECONSIDERATION
-------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Senior Judge:

In this case, we affirm the Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2012) [hereinafter UCMJ], sexual misconduct charges and specifications of which appellant was convicted and find no improper use of propensity evidence by the military judge as evidence that appellant commmitted the other charged sexual offenses.  In addition, we affirm the remaining findings of guilty by adopting the reasoning of our prior decision in *United States v. Sanchez*, ARMY 20140735, 2017 CCA LEXIS 203 (Army Ct. Crim. App. 28 Mar. 2017) (mem. op.).

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of three specifications of violating a general order by engaging

in conduct of a sexual nature with basic trainees in violation of Article 92, UCMJ. Contrary to his pleas, the military judge convicted appellant of an additional specification of violating a general order, four specifications of cruelty and maltreatment, and ten specifications of sexual assault and rape, in violation of Articles 92, 93, and 120, UCMJ.[1] The military judge sentenced appellant to a dishonorable discharge, confinement for twenty years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority deferred adjudged and waived automatic forfeitures and approved the remainder of the adjudged sentence.

On 28 March 2017, this court issued a memorandum opinion. *Id.* On 28 April 2017, appellant requested reconsideration in light of our superior court's decision in *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016). Appellant also suggested en banc consideration of his case. On 2 May 2017, our superior court issued the opinion in *United States v. Hukill*, 76 M.J. 219 (C.A.A.F. 2017). On 15 May 2015, in light of *Hukill*, this court granted appellant's motion for reconsideration but did not adopt appellant's suggestion that this case be reviewed en banc. On 14 June 2017, this court ordered briefs on whether propensity evidence was improperly used in a manner found to be in error in *Hukill*.

Accordingly, this case is again before us for additional review pursuant to Article 66, UCMJ. In this opinion, we reconsider whether the record demonstrates the military judge erred by considering evidence of charged misconduct to which appellant had pleaded not guilty in order to show appellant's propensity to commit the same charged misconduct. We find it does not.

## BACKGROUND

Appellant was a military police officer assigned as a drill sergeant at Fort Leonard Wood, Missouri. While assigned to a basic training unit, appellant was alleged to have engaged in a range of sexual misconduct with several female trainees including oral sex, digital vaginal penetration, groping and touching of trainees' private areas, and sexually harassing and maltreating the trainees by making sexually explicit and provocative comments towards them. Appellant's explicit comments included complimenting trainees' breasts and buttocks, indicating a desire to have a sexual relationship with a trainee, and explicit sexual demands such as "show me your tits." One victim indicated that if she failed to cooperate, appellant threatened to jeopardize her military status.

---

[1] The military judge found appellant not guilty of one specification of violating Army Reg. 600-20, Army Command Policy, (18 Mar. 2008), by wrongfully having a sexual relationship with a trainee, four specifications of cruelty and maltreatment, and five specifications of sexual assault and rape involving four trainees, in violation of Articles 92, 93, and 120, UCMJ.

In addition, appellant assaulted a fellow drill sergeant by touching her buttocks without her consent. He also sexually harassed the same drill sergeant through sexually provocative comments towards her.

At trial, appellant pleaded guilty to receiving oral sex from two female trainees and having vaginal and oral sex with a third trainee, thereby violating a local general regulation that prohibited engaging in sexual conduct with trainees. He pleaded not guilty to all offenses charged under Article 120, UCMJ.

Prior to trial, the government filed a notice of intent to offer evidence pursuant to Military Rule of Evidence [hereinafter Mil. R. Evid.] 413, namely to use charged sexual assault offenses as evidence appellant committed other charged misconduct. The government then filed notice of intent to offer evidence under Mil. R. Evid. 404(b). Later, the government also filed a supplemental notice of intent to offer uncharged misconduct of Private First Class (PFC) MM being sexually assaulted by appellant pursuant to Mil. R. Evid. 413. Although defense counsel initially requested a continuance based on the Mil. R. Evid. 413 evidence related to PFC MM, defense counsel did not object by motion or on the record during the court-martial to the admission of any Mil. R. Evid. 413 or Mil. R. Evid. 404(b) evidence. In addition, prior to trial, the military judge asked if the "413 issue" needed to be decided. Defense counsel responded, "No sir, we can move forward."

During the government's opening statement, the trial counsel requested the military judge "[c]onsider the 413 instruction and the penetrative acts . . . ." The defense did not object. Trial counsel used a demonstrative aid that visually listed and depicted pictures of four of the victims. The heading on the chart read "[p]reponderance of the evidence." Next to the four names was an equal sign and the word "guilty"—equating the addition of these four victims as amounting to guilt.

In closing arguments, both trial and defense counsel made reference to Mil. R. Evid. 413 and propensity evidence. The trial counsel discussed the similarities of the specifications in that they involved junior ranking soldiers, incidents of isolation, and appellant's authority over them. Defense counsel denied the existence of a pattern in appellant's behavior. In rebuttal, the government argued:

> In response to 413, Your Honor, if you determine by a preponderance of the evidence that these offenses occurred, you can use that to show plan . . . . You can consider that."

In the end, appellant did not object and military judge neither made a ruling on the Mil. R. Evid. 413 issues nor did he provide a Mil. R. Evid 403 balancing test on the record.

3

## LAW AND DISCUSSION

*Military Rule of Evidence 413*

While we review a military judge's decision to admit evidence under Mil. R. Evid. 413 for an abuse of discretion, *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013), the meaning and scope of Mil. R. Evid. 413 is a question of law we review de novo, *Hill*s, 75 M.J. at 354. Additionally, where constitutional dimensions are at play, "[a]n error is not harmless beyond a reasonable doubt when 'there is a reasonable possibility that the [error] complained of might have contributed to the conviction.'" *Id.* at 357 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). Our superior court has stated it is constitutional error for a military judge to give an instruction to a panel that permits Mil. R. Evid. 413 to be applied to evidence of charged sexual misconduct. *Id.* at 352. Recently, our superior court held "the rationale of *Hills* is equally applicable to both members and military judge-alone trials . . . ." *Hukill*, 76 M.J. at 220.

However, the legal presumptions applicable to panel members and military judges are different, which distinguishes this case from the one before our superior court in *Hills*. "Court members 'are presumed to follow the military judge's instructions.'" *United States v. Loving*, 41 M.J. 213, 235 (C.A.A.F. 1994) (quoting *United States v. Holt*, 33 M.J. 400, 408 (C.M.A. 1991)); *see also United States v. Ricketts*, 1 M.J. 78, 82 (C.M.A. 1975) (citing *Daniel v. United States*, 268 F.2d 849 (5th Cir. 1959); *Donaldson v. United States*, 248 F.2d 364 (9th Cir. 1957), *cert denied*, 356 U.S. 922 (1958)). In contrast, "[m]ilitary judges are presumed to know the law and to follow it absent clear evidence to the contrary." *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (citing *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997)). *See also United States v. Montgomery*, 20 U.S.C.M.A. 35, 39, 42 C.M.R. 227, 231 (1970) (citing *United States v. Menk*, 406 F.2d 124 (7th Cir. 1968) (distinguishing the legal presumptions applicable to trial judges from those applicable to juries). It is precisely because panel members are presumed to follow the instructions on the law, without recourse to independent legal knowledge or training, that our superior court expressed such concern in *Hills*:

> The juxtaposition of the preponderance of the evidence standard with the proof beyond a reasonable doubt standard with respect to the elements of the same offenses would tax the brain of even a trained lawyer. And, as the Supreme Court has observed, "Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might."

75 M.J. at 358 (quoting *Boyde v. California,* 494 U.S. 370, 380-81 (1990)).

While the presumptions applicable to panel members and military judges are different, they are not dispositive. These presumptions are a starting point in our appellate analysis, but they can be rebutted by the evidence in the record. For example, in *Hukill*, the presumption that a military judge knows and follows the law was not *rejected* by our superior court; it was *rebutted by the evidence* in the case when the military judge adopted the legal reasoning of a misapplied instruction. *See* 76 M.J. at 221 ("The referenced instruction was not given as Hukill was ultimately tried by military judge alone, but it does reflect the military judge's understanding of the law at the time."). The precise "quantum of evidence" required to overcome this presumption is a matter of appellate judgement. *United States v. Biesak*, 3 U.S.C.M.A. 714, 720, 14 C.M.R. 132, 138 (1954). However, we find no support for appellant's position that the presumption a military judge knows and correctly applies the law can be overcome by mere silence by the military judge in a judge-alone trial. To find this or any other presumption can be rebutted by silence (i.e., no evidence at all), is to find the presumption does not exist. If our superior court intended to overturn or modify in *Hills* or *Hukill* the longstanding presumption regarding military judges, it would have done so explicitly, without quoting dicta from a Supreme Court opinion that illustrates the comparative advantage a military judge would have over panel members in adhering to subtle nuances in the law.

Moreover, this presumption of knowing and following the law applies to military judges even when an appellate court subsequently defines or clarifies the applicable law. *See United States v. Rapert,* 75 M.J. 164, 170 n.11 (C.A.A.F. 2016) (explaining that military judges are presumed to have reached the correct legal conclusion, consistent with later appellate guidance, "absent clear evidence to the contrary[;]" otherwise "a military judge could rarely enjoy affirmance when ruling on a matter of technical first impression"). Furthermore, a military judge enjoys the separate application of this rebuttable presumption to each and every legal determination he or she makes. Even where the record contains clear evidence the military judged operated under an erroneous view of the law or facts when ruling on the admissibility of evidence, the military judge still enjoys this presumption when appellate courts review the military judge's findings of guilt. *See United States v. Roberts,* 69 M.J. 23, 26-27 n.7, 27-30 (C.A.A.F. 2010) (distinguishing the military judge's legal and factual errors when ruling on the admissibility of evidence under Mil. R. Evid. 412 from the military judge's use of admitted evidence in arriving at his findings of guilt, where he still enjoyed the presumption of knowing and following the law). As *Rapert* and *Roberts* illustrate, the fact that a military judge may have misapplied Mil. R. Evid. 413 regarding the admissibility of evidence does not overcome the presumption that he or she knew and followed the law regarding the government's burden of proof beyond a reasonable doubt. Accordingly, we are not at liberty to strip a military judge of this presumption broadly in the entire trial by pointing to a limited error.

In *Hukill*, our superior court in assessing the applicable presumption found it was sufficiently rebutted by the evidence in the record; and, once rebutted, the

presumption had no bearing on the prejudice analysis. 76 M.J.at 223 ("The presumption is that military judges will correctly follow the law, which would normally result in no legal error, not that an acknowledged error is harmless. The presumption cannot somehow rectify the error or render it harmless."). In this case, the military judge did not state affirmatively that he would consider evidence of charged offenses to prove other charged offenses. There is nothing in the record *in this case* that suggests the military judge was unaware of the applicable standard of proof or unwilling to hold the government to its burden. Although appellant cites to various misstatements by the trial counsel, we cannot presume the military judge adopted counsel's view of the law. What is missing is evidence of error *on the part of the military judge*, to whom the presumption attaches. Therefore, given the absence of clear evidence to the contrary, we presume the military judge held the government to its full burden of proof beyond a reasonable doubt for each and every offense.

In addition, where the military judge found appellant guilty, the strength of the government's evidence was high. While the evidence against appellant was largely testimonial, key instances were corroborated by more than one victim. For example, Private BL and Specialist CF testified consistently about a sexual offense appellant simultaneously committed against both of them when he was their drill sergeant. In specific instances where the government's evidence failed to meet the high standard of proof beyond a reasonable doubt, the military judge acquitted appellant. In this regard, the record provides insight into the military judge's deliberative process. Although the trial counsel displayed a PowerPoint slide depicting the sum of the four victims' testimony, as represented by their photographs, which equaled "guilty" by the "preponderance of the evidence," the military judge acquitted appellant of an offense related to one of the victims. We infer from this finding of not guilty that the military judge did not adopt the trial counsel's misunderstanding of the government's burden of proof.

In sum, we find the presumption that the military judge knew and correctly followed the law was not rebutted in this case by the military judge's silence in a judge-alone trial. The quantum of evidence required to rebut this presumption is not so low that silence is sufficient. Similarly, any misstatements by the trial counsel are not imputed to the military judge, absent evidence the military judge adopted the rationale of the misstatements.

*Waiver*

Alternatively, we find appellant is not entitled to relief because he waived any error related to Mil. R. Evid. 413 when he abandoned the issue by agreeing it was moot before the military judge deliberated on the findings. *See United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (explaining the effect of a valid waiver is that it "leaves no error to correct on appeal"). Similarly, appellant waived any claim of improper comments regarding propensity during the opening statement or closing

arguments by failing to raise an objection. Mil. R. Evid. 905(e); Mil. R. Evid. 919(c). Appellant's argument that "[d]efense counsel at the time [of trial] did not have a basis for an objection" is unconvincing based on the state of the law and the facts of this case. In *Hills*, our superior court did not create a new presumption of innocence or burden of proof previously unrecognized in the law. Instead, it reaffirmed these longstanding tenets of Due Process by citing its prior holdings. *See Hills*, 75 M.J. at 356 ("As we noted in [*United States v.*] *Wright*, [53 M.J. 476, 481 (C.A.A.F. 2000), Mil. R. Evid.] 413 'would be fundamentally unfair if it undermines the presumption of innocence and the requirement that the prosecution prove guilt beyond a reasonable doubt.'").

When the trial counsel used a demonstrative aid that appeared to support a finding of guilty based on the preponderance of the evidence, the state of the law was sufficiently settled to provide appellant a basis for objection. Any tactical decision not to object to this misstatement of the burden of proof in a judge-alone trial was not the product of insufficiently developed law. *See Hills*, 75 M.J. at 356 (quoting *Coffin v. United States*, 156 U.S. 432, 453-54 (1895)) ("The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law."). Therefore, we find sufficient basis to hold appellant on appeal to his waiver at trial.

**CONCLUSION**

We expressly adopt the rationale and holdings from our previous decision of 28 March 2017 with regard to the issue of transfer of general court-martial convening authority and unlawful command influence. *Sanchez*, 2017 CCA LEXIS 203, at *3-13.

On reconsideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Judge FEBBO and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

7