Albert J. WILD, Appellant,

v.

Bennett Y. BREWER, Revenue Agent of
the Internal Revenue Service,
Appellee.

No. 18860.

United States Court of Appeals
Ninth Circuit.

June 2, 1964.

Brown, Vlassis & Bain, Jack E. Brown, and Arthur P. Allsworth, Phoenix, Ariz., and McLane & McLane, and W. Lee McLane, Jr., Phoenix, Ariz., and Thaddeus Rojek, Washington, D. C., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Joseph M. Howard, and Burton Berkley, Attys., Dept. of Justice,

Washington, D. C., and Carl A. Muecke, U. S. Atty., and Richard C. Gormley, Asst. U. S. Atty., Phoenix, Ariz., for appellee.

Before MERRILL, Circuit Judge, MADDEN, Judge of the Court of Claims, and KOELSCH, Circuit Judge.

### On Rehearing

MERRILL and KOELSCH, Circuit Judges:

Judgment affirmed on the authority of Grant v. United States (1912) 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423, and Wilson v. United States (1911) 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771.

MADDEN, Judge (dissenting):

I respectfully dissent from the decision of the court. In order to explain the reasons for my dissent, I state the facts of the case.

Brewer, an agent of the Secretary of the Treasury, served upon Wild a summons addressed to

Albert J. Wild, President

Air Conditioning Supply Company

requiring Wild to appear before Brewer to give testimony relating to the tax liability and/or the collection of the tax liability of "the above named person" and to bring with him and produce for examination certain books and records specified in the summons. All of the books and records specified were books and records of Air Conditioning Supply Company.

Wild appeared, pursuant to the summons, but refused to produce the books and records called for in the summons. He gave as the reason for his refusal the fact that the production of the books and records might tend to incriminate him and thus compel him, in a criminal case, to be a witness against himself in violation of his rights under the Fifth Amendment to the Constitution of the United States, and that to compel him to produce the books and records would amount to an unreasonable search and seizure, in violation of his rights under the Fourth Amendment to the Constitution. He stated that Air Conditioning Supply Company, though it was a corporation, was owned 100 per cent by himself, and was completely controlled and directed by him.

Brewer's summons to Wild was, as it showed on its face, issued pursuant to Section 7602, Internal Revenue Code of 1954, 26 U.S.C., 1958 ed., § 7602. Section 7604 gives to the appropriate United States District Court the power, upon application by the Secretary of the Treasury or his delegate, to issue an attachment against a person neglecting or refusing to obey a summons issued under § 7602, as for contempt. Brewer made an application to the United States District Court for the District of Arizona. That court issued the attachment, held a hearing at which evidence was taken and arguments were heard, and thereafter made findings of fact and stated conclusions of law to the effect that the privilege against self-incrimination and unreasonable search and seizure cannot be claimed by a corporation; that the records requested were the property of Air Conditioning Company, Inc.; and that Brewer was entitled to get the records. The court ordered Wild to appear before the court at a specified time and produce the records.

Wild brought the instant appeal from that order of the District Court. The records were placed in escrow in a bank, and a stay was granted pending this appeal. The issue, then, in the appeal is whether Wild, who might be incriminated by what was written in the documents which were called for in the summons, could, in the circumstances, refuse to turn the documents over to the Government.

The privilege guaranteed by the Fifth Amendment, against the Government of the United States, "in any criminal case" not to be compelled to be a witness against one's self, is available not only

to defendants in criminal trials but to witnesses in any kind of official proceeding under the auspices of the United States. It applies not only to the giving of oral testimony, but to the production from one's possession of incriminating documents or objects, Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, at least if the possession is coupled with a certain minimum of right. See United States v. White, 322 U.S. 694, 699, 64 S.Ct. 1248, 88 L.Ed. 1542.

Whether the Constitutional Fathers were wise or not in inserting this guaranty in the Constitution might now, 172 years after its insertion, be regarded as irrelevant, except that when, in a case such as the instant one, special circumstances exist, it may be permissible to weigh the arguments which, in this country and in England, have been advanced for and against the privilege.

In the 1911 case of Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, at page 549, 55 L.Ed. 771, Mr. Justice McKenna, at page 392, in a dissenting opinion strongly urging a generous interpretation of the privilege, referred to certain critical discussions of the privilege in legal literature. He said:

> "Indeed, eminent legal names may be cited in criticism, if not ridicule, of the policy expressed by the 5th Amendment, that is, the policy of protection against self-incrimination. It is declared to have no logical relation to the abuses that are said to sustain it, and that the pretense for it, so far as based on hardship, is called an 'old woman's reason' (also a 'lawyer's reason') and a 'double distilled and treble refined sentimentality.' So far as based on unfairness, it is called 'the fox hunter's reason,' its basis being that a criminal and a fox must have a chance to escape, the subsequent pursuit being made thereby more interesting."

Justice McKenna cited Bentham on Judicial Evidence, 1827, vol. 5, page 229 et seq., for the foregoing. His own brief response is, "A reply would be difficult if government had no other concern than the punishment of crime."

In the 1937 case of Palko v. State of Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288, Mr. Justice Cardozo, speaking *obiter*, but for all but one of the Justices, said:

> "What is true of jury trials and indictments is true also, as the cases show, of the immunity from compulsory self-incrimination. Twining v. New Jersey, supra [211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97]. This too might be lost, and justice still be done. Indeed, today as in the past there are students of our penal system who look upon the immunity as a mischief rather than a benefit, and who would limit its scope, or destroy it altogether. No doubt there would remain the need to give protection against torture, physical or mental. Brown v. Mississippi, supra [297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682]. Justice, however, would not perish if the accused were subject to a duty to respond to orderly inquiry."

In Ullmann v. United States, 350 U.S. 422, 426, 427, 76 S.Ct. 497, 500, 100 L.Ed. 511, Mr. Justice Frankfurter said, for the Court:

> "It is relevant to define explicitly the spirit in which the Fifth Amendment's privilege against self-incrimination should be approached. This command of the Fifth Amendment ('nor shall any person * * * be compelled in any criminal case to be a witness against himself * * *') registers an important advance in the development of our liberty—'one of the great landmarks in man's struggle to make himself civilized.' Time has not shown that protection

from the evils against which this safeguard was directed is needless or unwarranted. This constitutional protection must not be interpreted in a hostile or niggardly spirit. Too many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are either guilty of crime or commit perjury in claiming the privilege. Such a view does scant honor to patriots who sponsored the Bill of Rights as a condition to acceptance of the Constitution by the ratifying States. * * * "

There is without question a general doctrine that an officer of a corporation who, as such officer, has custody of its records may not successfully refuse to produce those records in response to a subpoena issued to the corporation and served upon him as custodian, on the ground that the records contain material which would incriminate him. Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771. In that case Mr. Justice Hughes, during his earlier period of service on the Court, wrote the opinion which directly so held. The result of the decision was that Wilson, the president of the corporation, being already under indictment by the same grand jury which subpoenaed the corporation's records, was held to have been validly sentenced for contempt for refusal to supply to the grand jury documents which would be used to convict him of the crimes which the grand jury was investigating. His sentence for contempt was that he be committed "until he delivers to the United Wireless Telegraph Company the said books called for by said subpoena, and ceases to obstruct and impede the process of this court, or otherwise purge himself of this contempt." The other directors of United Wireless were willing to produce the records if they could get them from Wilson. Wilson's plight was an unhappy one. Was it because he did not *own* the books which he was refusing to produce? Appellant Wild in our case quotes from United States v. White, 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542, the statement:

" * * * the papers and effects which the privilege protects must be the private property of the person claiming the privilege, *or at least in his possession in a purely personal capacity.*" (Italics added)

Wilson, of course, did not own the books nor did he have custody of them in a purely personal capacity.

A corporation does not have the Constitutional privilege against self-incrimination. It therefore cannot, if its records are subpoenaed, assert the Fifth Amendment privilege. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Wilson v. United States, 221 U.S. 361, 382, 31 S.Ct. 538, 55 L.Ed. 771. It may, however, complain that a search is unreasonable if the demand for production is so broad as to be unjustifiably burdensome. Essgee Co. of China v. United States, 262 U.S. 151, 156–158, 43 S.Ct. 514, 67 L.Ed. 917. But if a corporation, though under a duty to produce its records pursuant to a subpoena, is unable to do so because, as in Wilson v. United States, supra, the corporate officer who has custody of the records will not surrender them for production, one practical way to obtain them is by pressure on the officer. That was done in Wilson by his imprisonment for contempt.

With some background in the applicable doctrine, we return to the situation of the appellant Wild and his circumstantial relation to the Constitutional privilege. His corporation as such was not, as we have seen, entitled to the privilege. He did not claim the privilege for the corporation, and could not have done so. He claims it for himself, and says that he, and not any artificial legal entity, will be the one to suffer the punishment if he is obliged to furnish to the Government the evidence which will bring about his conviction. Wilson made the same contention, but his contention was rejected.

Wild quotes from United States v. White, 322 U.S. 694, 701, 64 S.Ct. 1248, 1252, 88 L.Ed. 1542:

> "The test, rather, is whether one can fairly say under all the circumstances that a particular type of organization has a character so impersonal in the scope of its membership and activities that it cannot be said to embody or represent the purely private or personal interests of its constituents, but rather to embody their common or group interests only."

Wild says that since he is the sole owner of his corporation, the corporation does embody the "purely private or personal interests of its [only] constituent(s)," who is Wild himself.

If there are several or many or perhaps even two stockholders in a corporation, it may well be urged by those who had no part in any wrongdoing by the corporation or by its president or secretary who had custody of the books that their corporation and they have a right not to be embarrassed or damaged by their officer's suppressing the records which belong to them, and which he holds only as custodian for them. That was the situation in Wilson, supra. That reason has no application whatever to Wild's situation. He being the sole owner of the corporation, no one but himself can be affected by what he does with it, or to it. Before the summons was served, he could have destroyed the records, or, indeed, everything that the corporation owned, without accountability to anyone.

What I have just said seems to leave the Government with no reason for denying the Fifth Amendment privilege to Wild, except the reason that the records which he suppressed belonged to a corporation and that, therefore, Wilson and other precedents deny him the Constitutional privilege. But his case differs from Wilson's in a respect which the Supreme Court thought, in United v. White, supra, deserved the careful, though *obiter*, expression hereinabove quoted.

With regard to any importance which may attach to the fact that the records belonged to a corporation and were, merely for that reason, particularly subject to be made available to the United States, I confess, with deference, that the reason given in Wilson v. United States, 221 U.S. 361, 382, 31 S.Ct. 538, 55 L.Ed. 771, viz. the impliedly reserved visitatorial power of the state which created the artificial legal entity, which power somehow is transferred to the Federal Government, seems to me to be something of a make-weight in the cases in which it has been expressed. And I think that the argument that one who incorporates his business has only himself to blame if he thereby forfeits Constitutional rights is not of Constitutional weight.

I think that to deny this Constitutional privilege to Wild, would violate the Supreme Court's admonition in Ullmann that "This constitutional protection must not be interpreted in a hostile or niggardly spirit."

The court rejects Wild's claim of the privilege against self-incrimination because, in the 1913 case of Grant v. United States, 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423, the owner of a one-owner corporation was not permitted to assert the privilege with regard to the corporation's papers. The Supreme Court in Grant disposed of the claim of privilege in the following language:

> "Although the merits of the constitutional question are thus before us, it does not require extended discussion in view of the recent decisions of this court. The books and papers called for by the subpoena were corporate records and documents. * * They remained subject to inspection and examination when required by competent authority * * *."

It is apparent that the Court in the Grant case did not regard it as worthy of discussion that it was, in fact, compelling an individual who was the sole owner and possessor of incriminating papers, albeit his ownership of the papers rested on his

ownership of the corporation which owned them. The Court's decision was syllogistic. It stated that it had recently decided, in Wilson v. United States, supra, that an officer of a corporation could not successfully claim the privilege for papers belonging to the corporation but which would incriminate the officer; the papers in Grant were corporation papers; therefore Grant was ruled by Wilson.

As recently as 1937, Justice Cardozo for the Supreme Court in Palko v. Connecticut, supra, speaking for the Court, referred sympathetically to the views of those observers who thought the privilege itself was a mischief rather than a benefit.

I suggest that nothing which the Supreme Court has decided or said in the last two decades can be reconciled with the view that a dry syllogistic approach could compel an individual to produce his own papers from his own possession to assist his government to convict him of crime. The language of the Court in Ullmann, supra, in 1956; that of the Court in White, supra, in 1944, seems to me to say that the Court will not decide a question of the constitutional right of an individual on the basis of a dry syllogism such as that General Motors is a corporation and its president could not refuse to produce its records on the ground that they might incriminate him; Air Conditioning Supply Company is a corporation, therefore its president, though he is the sole owner of the corporation and its records, cannot refuse to produce its records.

The recent decisions of the Supreme Court, a few of which are Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); National Association for the Advancement of Colored People v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Massiah v. United States, 84 S.Ct. 1199 (1964), seem to me to make this court's decision in the instant case anachronistic.