**UNITED STATES of America,**
**Plaintiff,**

v.

**OWENS–CORNING FIBERGLAS CORPORATION et al., Defendants.**

**Crim. No. 40052.**

United States District Court
N. D. California.

July 31, 1967.

Lyle L. Jones, San Francisco, Cal., Lawrence Kill, Samuel Prezis, Washington, D. C., for plaintiff.

John J. Goldberg, B. J. Feigenbaum, San Francisco, Cal., and Robert H. Knight, New York City, for Owens-Corning Fiberglas Corp..

Howard Downs and Denis T. Rice, San Francisco, Cal., for The Brookman Co., Inc., Cramer Acoustics, Joseph A. Mancini, Robert F. Dumesnil, and John W. Frey.

Willard P. Norberg, San Francisco, Cal., for Shaw Insulation Co., Inc., and Howard Shaw.

Loyd W. McCormick, San Francisco, Cal., for The Sono-Ceil Co. and George E. Carrieres.

C. O. Heffernan, San Leandro, Cal., for H & H Insulation Co.

James T. Danaher, Palo Alto, Cal., for The Jack Dymond Co.

Richard J. Archer, San Francisco, Cal., for Schwartz & Lindheim, Inc., d/b/a United Acoustic Co. and Stephen Lindheim.

Robert H. Schnacke, San Francisco, Cal., for Donald Bradshaw.

Arthur H. Connolly, Jr., and Bruce Leavitt, San Francisco, Cal., for Charles B. Purcell, Western Asbestos Co., and F. K. Pinney.

Paul B. Gibson and Don H. Banks, San Francisco, Cal., for Pritchard & Stone, Inc., Norris C. Stone and Leslie C. Pritchard.

Stephen C. Leonoudakis and Leo T. McCarthy, San Francisco, Cal., for James M. Brennan.

## MEMORANDUM AND ORDER

OLIVER J. CARTER, District Judge.

Defendants are charged by information with engaging in an unlawful combination and conspiracy in restraint of interstate trade in the sale and installation of acoustical ceiling materials in the Northern District of California in violation of 15 U.S.C. § 1 (the Sherman Anti-Trust Act). Defendants have moved on various grounds to dismiss the information. The motions have been briefed, argued and submitted to the Court for judgment. Since one of the grounds for dismissal involved a possible application of Escobedo v. State of

Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), the Court at the suggestion of counsel for the defense by letter of December 20, 1965, has delayed its decision until the disposition by the Supreme Court of Stewart v. State of California. That case was decided June 13, 1966, by the Supreme Court sub nom Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ The information filed in this Court against the defendants resulted from an investigation of the glass fiber industry conducted by a federal grand jury in the Northern District of Ohio. Defendants argue that the presentation to that grand jury of matters known to have occurred in the Northern District of California was a purposeful abuse of the grand jury system on the part of the attorneys for the Anti-Trust Division of the Department of Justice. They claim that this device was a ruse on the part of the government to trick them into giving self-incriminatory evidence to the government attorneys. The Court finds that there was no abuse of the grand jury system and no deceit practiced on the defendants by the government.

■■ The grand jury in the Northern District of Ohio was properly called, impanelled and charged by the district court in Ohio. Defendants make no claim that the grand jury itself was not a proper statutory body. The attorneys for the Anti-Trust Department were authorized by statute, 5 U.S.C. § 310, to conduct grand jury proceedings and were specifically authorized and directed by the Attorney General of the United States to conduct such investigations in regard to possible Anti-Trust violations in the glass fiber industry. The greatest producer of such glass fibers is the Owens-Corning Fiberglas Corporation which has its principal place of business in Toledo, Ohio, a city within the Northern District of Ohio. The government called the attention of the grand jury in the Northern District of Ohio to possible violations of the Anti-Trust laws in the glass fiber industry in their own district. Defendants do not object to the

propriety of such action on the part of the government, nor could they. The investigation of possible federal offenses in their own district is clearly the prime function and duty of the grand jury.

■ Defendants object to the fact that in the eighth month of the investigation the corporate defendants were subpoenaed to present their corporate documents and records in regard to methods of fixing prices for services and material in the Northern District of California in the acoustical tile industry. Defendants argue that at this time it was known to the government that no overt acts in relation to a conspiracy to restrain trade in such industry in Northern California had taken place in the Northern District of Ohio, and that therefore the grand jury in Ohio had neither venue nor jurisdiction to inquire into such matters. The defendants' arguments are not well taken. A properly constituted grand jury may inquire into acts occurring in another district if such acts are relevant to possible offenses within the grand jury's jurisdiction. As stated in Masinia v. United States, 296 F.2d 871 (Cir. 8, 1961) citing Brown v. United States, 245 F.2d 549 (Cir. 8, 1957):

"'* * * The broad investigatory powers of a grand jury, as an arm or agency of the court by which it is appointed, extend (in its efforts to uncover criminal offenses prohibited by federal law) to an inquiry into facts that occurred in another district provided that that inquiry has to do with relevant matters. For instance, if a conspiracy is what the inquiry is directed at, the acts and conduct of the alleged conspirators that may have occurred in a district other than that where the grand jury is sitting may be gone into.' 245 F.2d at 554.

"Thus if in the instant case the grand jury was investigating a possible federal offense within its jurisdiction, it could inquire as to any acts, related to such offense, that may have taken place outside of its district." 296 F.2d 875.

■ Moreover, the argument of defendants ignores the fact that under

the Sherman Act the conspiracy to restrain interstate trade is itself a violation of the Act, and there need be no overt act in the district alleged in order to give jurisdiction and venue. It is enough if in fact the agreement to restrain trade was entered upon within the district. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); United States v. New York Great Atlantic and Pacific Tea Co., 137 F.2d 459 (Cir. 5, 1943); United States v. United States Steel Corp., 233 F.Supp. 148 (S.D.N.Y.1963). So that in the case at bar the grand jury had jurisdiction to investigate possible agreements made within its district by the largest producer of glass fibers with others to restrain trade in the Northern District of California in the related acoustical ceiling industry regardless of whether any overt act in furtherance of such a conspiracy occurred within the Northern District of Ohio. Thus the information requested was a proper subject of investigation by the Ohio grand jury.

██ Defendants contend that at the time the particular subpoenas were issued the particular grand jury which had originated the investigation into the glass fiber industry had been dismissed without returning an indictment, and that the government had merely used the device of the subpoena for its own purposes after the grand jury investigation had ceased. The weakness of this contention is that the grand jury making the investigation was called into being by a properly qualified United States District Court under the provisions of Rule 6 of the Federal Rules of Criminal Procedure, and was operating well within the eighteen month time limitation set by the Rule. It is not for this Court to examine into those proceedings, and any effort in that direction should have been pursued in the Northern District of Ohio.

█ Defendants argue that the government purposely deceived them into believing that they were not the subject of the inquiry of the Ohio grand jury.

The defendants' main contention in this regard is that the subpoena itself should have informed the defendants that they were to submit corporate documents in connection with their own possible incrimination in a conspiracy with Owens-Corning. A reasonable reading of the subpoenas in the case at bar shows that the subpoenas do advise a witness that a conspiracy in the acoustical tile industry was the subject of inquiry. But even aside from this fact, the case of Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L. Ed. 652 (1906), after a discussion concerning the fact that a grand jury investigation need not be based on a specific charge but could proceed upon the presentment of the jury itself, stated:

> " * * * in summoning witnesses it is quite sufficient to apprise them of the names of the parties with respect to whom they will be called to testify, without indicating the nature of the charge against them." 201 U.S. 65, 26 S.Ct. 375.

See also In re Eastman Kodak, 7 F.R.D. 760 (W.D.N.Y.1947).

█ In the case at bar there is no question as to what documents were called for, and what the investigation in Ohio concerned. Seemingly what the defendants in fact object to is the absence of a specific statement either in the subpoena itself, or in the correspondence of the government in connection with the subpoena, that the defendants themselves were under investigation. There is no such requirement in the present status of the law. Further the court finds no merit in the argument that the defendants were deceived by the use of the term fiberglas into believing that the investigation concerned only Owens-Corning as the term fiberglas was used synonymously with Owens-Corning in the industry. The defendants were asked by the attachment to the subpoena to submit information concerning price fixing in acoustical ceiling material. It is hard to believe that the witnesses were not apprised by this fact that either they themselves, or at least their industry, were the subject of an investigation. If

the defendants misinterpreted the subpoenas and accompanying letters, it was not the result of deceit practiced by the government.

All of the subpoenas in question were served upon corporations and asked for corporate documents and records. Defendants admit that as to those records and documents there could be no claim of privilege against self-incrimination. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370 (1906); Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946). Defendant Brennan contends that he is in a different position from the others in regard to the subpoena. However, the subpoena which he questions was directed to James Brennan Co., Inc., which is a California corporation. The fact that defendant Brennan is the sole owner of the corporation does not give defendant Brennan the right to claim the Fifth Amendment privilege with respect to the corporation's books either for himself or the corporation. See United States v. Goldberg, 330 F.2d 30 (Cir. 3, 1964); Wild v. Brewer, 329 F.2d 924 (Cir. 9, 1964); United States v. Donnelley, 241 F.Supp. 200 (D.Nev.1965); Wright v. Detwiler, 241 F.Supp. 753 (W.D.Pa. 1964). The defendants contend, however, that the evidence finally submitted to the government was in the form of a series of compilations of matter contained in the documents and records, and not the documents and records themselves. Defendants claim that they had the privilege to withhold information contained in the compilations insofar as it was incriminatory to them. They then state that when the negotiations with the government for the submission of compilations in lieu of the documents began, the attorneys for the government had the duty to warn them of their constitutional rights to counsel, and of their privilege against self-incrimination, because in the language of Escobedo, supra, the investigation concerning restraint of trade in acoustical ceiling industry had begun to "focus" on them. Counsel for the corporate defendants argue that Escobedo gives a right apart from Fifth Amendment privilege based solely on the Sixth Amendment right to counsel, so that while a corporation has no privilege against self-incrimination, it does have a right to counsel, and officers of the corporation should be warned of the corporation's right before statements are elicited from them for the corporation.

The Supreme Court in Miranda v. State of Arizona, supra, made it clear that Escobedo was concerned with the "necessity for procedures which assure that the individual is accorded his privilege under the Fifth Amendment to the Constitution not to be compelled to incriminate himself." Thus, as a corporation has no right against self-incrimination, Escobedo and Miranda have no application as to them.

The defendant officers though do have a constitutional privilege against self-incrimination. But a review of the facts alleged in this case shows that the officer defendants do not come within the scope of the safeguards laid down by Escobedo and Miranda. The Court in Miranda stated:

"Our holding * * * briefly stated * * * is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.[4]" 384 U.S. 444,

"4. This is what we meant in Escobedo when we spoke of an investigation which had focused on an accused."

86 S.Ct. 1612.

The court further defined the question before it as follows:

"The constitutional issue we decide in each of these cases is the admissibility

of statements obtained from a defendant questioned while in custody and deprived of his freedom of action. In each, the defendant was questioned by police officers, detectives or a prosecuting attorney in a room in which he was cut off from the outside world. In none of these cases was the defendant given a full and effective warning of his rights at the outset of the interrogation process. In all the cases, the questioning elicited oral admissions, and in three of them, signed statements as well which were admitted at their trials. They all thus share salient features—incommunicado interrogation of individuals in a police-dominated atmosphere, resulting in self-incriminatory statements without full warning of constitutional rights." 384 U.S. 445, 86 S.Ct. 1612.

■ In the case at bar none of the defendants was taken into custody or otherwise deprived of his liberty. None of the defendants was held incommunicado in a room cut off from the outside world. None of the defendants was subjected to questioning in a police-dominated atmosphere. There is evidence that talk of the submission of compilations in place of the corporate documents was initiated by the defendants; the submission of compilations was not demanded by the government. The compilations were the products of the defendant officers' own efforts working from the corporate documents and records, free from the supervision of law enforcement officers, with ample opportunity to consult with counsel. The affidavit of Howard M. Downs, Esq., filed February 2, 1965, states that at least some of the defendants did consult with counsel concerning the effect and scope of the subpoena. The submission of these compilations in lieu of the documents demanded by a subpoena is just not in the same category as custodial interrogation.

■ The statements of the defendant officers embodied by the compilations are subject to the pre-*Escobedo* test of due process. The only suggestion as to a violation of due process is defendants' claim that the compilations were coerced from them in that the government purposely made the burden of complying with the subpoenas so onerous that the defendants would have no choice but to submit compilations. This argument ignores the fact that, if the subpoena was unreasonable as to the quantity of documents or as to the time period covered by the documents, it could have been attacked as an unreasonable search and seizure. Application of Certain Chinese Family Benevolent and District Associations, 19 F.R.D. 97 (N.D.Cal.S.D. 1956). If in fact the subpoenas were defective in this regard, they could have been attacked regardless of whether the witnesses were themselves the possible subject of the investigation. Defendants knew that they had a duty to comply with the subpoena. As a matter of their own convenience they chose to comply with them by submitting compilations. The fact that one of two choices is more convenient than the other is a factor taken into consideration by anyone in making a decision. It does not do away with freedom of choice. If anything, it explains why the defendants in the case at bar voluntarily chose to submit compilations rather than the documents.

■ Defendants move to dismiss the information on the grounds that it is fatally defective in that it fails to state an offense. The general rules for determining the sufficiency of an indictment are whether the indictment as a practical matter states the elements of the offense clearly enough to allow the defense to prepare for trial and to plead a judgment in bar of a future prosecution for the same offense. Turf Center, Inc. v. United States, 325 F.2d 793 (Cir. 9, 1963); Stapleton v. United States, 260 F.2d 415, 17 Alaska 713 (Cir. 9, 1958). In the case at bar the defendants have chosen to parse the information into fine parts and argue that the individual parts do not state an offense. The main complaint of the defendants is based on the words "restraint of * * * interstate trade and commerce in the sale and

installation of acoustical material ceilings". Indictment page 6. Defendants argue that as there is admittedly no interstate trade in ceilings, the information is fatally defective for failing to plead a restraint on interstate commerce. As is very often the case the three stars in the above quotation represent the answer to defendants' objections. The omitted words are "the hereinbefore described" interstate trade and commerce. The information under a prior heading

*"TRADE AND COMMERCE INVOLVED"* factually alleges at great length how price fixing in the local acoustical ceiling industry restrains interstate commerce in acoustical materials. Defendents further attack the use of the disjunctive "or" in the paragraph describing the "stream of commerce" involved. The paragraph states that the interstate materials are shipped to the defendants directly or to suppliers. The context of the statement shows that the suppliers are sometimes an alternative extra step in the stream of commerce, but that the defendents acted as a conduit through which the materials flowed with or without the alternative extra step.

In short, the information taken as a whole fully informs the defendants of what they should be prepared to meet at trial, and all of the defendants are aware of exactly what they are charged with.

 Defendants argue that the information should be dismissed because hard labor is among the possible penalties which could be imposed for the offense charged. Thus the offense can be prosecuted only by indictment. The statute under which the defendants are charged, 15 U.S.C. § 1, limits the offense to a misdemeanor punishment of a fine not exceeding $50,000, or imprisonment not exceeding one year, or both. The case of American Tobacco Co. v. United States, 147 F.2d 93 (Cir. 6, 1944) specifically held that a prosecution for violation of 15 U.S.C. § 1 could proceed by information, and that the Fifth Amendment of the Constitution did not require an indictment for such a case.

 Defendants claim that the information should be dismissed as to certain of the officer defendants because those officers are entitled to immunity from prosecution under 15 U.S.C. § 32. That section states:

"No person shall be prosecuted or be subject to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise, in any proceeding, suit, or prosecution under sections 1–7 of this title * * *."

But the section is limited by 15 U.S.C. § 33:

"Under the immunity provisions in section 32 of this title, immunity shall extend only to a natural person who, in obedience to a subpoena, gives testimony under oath or produces evidence documentary or otherwise, under oath."

In the case at bar none of the defendants gave testimony under oath. No evidence documentary or otherwise was produced by any of the defendants under oath. Thus the defendants fail to place themselves within the clear language of the immunity statutes, regardless of whether the argument as to the matters submitted were tendered by the corporate defendants or the officer defendants.

 Defendants argue as a final ground for the dismissal of the information that they have been denied their constitutional right to a speedy trial by the government's delay in filing the information. They allege that the delay in filing the information was occasioned by the government's decision to prosecute this conspiracy by grand jury in the Northern District of Ohio. The defendants claim that the government knew that no overt acts had been committed in Ohio, and that by proceeding in a district "without jurisdiction" the government intentionally delayed the point in time at which defendants would become aware of the charges leveled against them. Defendants claim that the government became aware of the matters charged in the

information in 1963, but did not file the information in this Court until December, 1964. The question of whether 48 (b) of the Federal Rules of Criminal Procedure, or the Sixth Amendment right to a speedy trial come into play before the initiation of prosecution has been left open by the Ninth Circuit Court of Appeals, Sanchez v. United States, 341 F.2d 225 (Cir. 9, 1965). Buatte v. United States, 350 F.2d 389 (Cir. 9, 1965) sets out the four factors to be taken into consideration in determining whether the right to a speedy trial has been violated. They are: the length of the delay, the reasons for the delay, the prejudice to defendant, and waiver by the defendant. The records in this case fall far short of showing any deliberate plan or scheme on the part of the government to delay defendants' trial. The record in fact shows that the decision to hold the investigation in the Northern District of Ohio did not itself result in a delay. Defendants have not shown, nor could they show, that the filing of this information could have been expedited by holding the original grand jury investigation in Northern California. The time which elapsed between the first knowledge of the alleged conspiracy and the filing of the information was due to the very nature of the crime charged. A reading of the information in the case at bar shows that it could have resulted only from an extensive investigation. A complex conspiracy is charged against ten corporate defendants and twelve officer defendants; seven other corporations and officers are listed as co-conspirators. The conspiracy is alleged to have existed over at least a six-year period from before the year 1955 to at least June of 1961. The dollar value of the successful bids in question is alleged to approximate $30,-000,000. Secret meetings are alleged as often as once a week during the time period covered by the information at various hotels, restaurants and locations throughout the Northern California market area. The Court finds that the lapse of time in the case at bar was due to the complexity and the secrecy of the conspiracy in which the defendants are alleged to have engaged, and not to any deliberate choice or mistake on the part of the government.

■■■ Defendants have also moved to inspect the grand jury minutes of the grand jury of the Northern District of Ohio, meaning to examine the transcripts of the testimony given before that grand jury. Defendants have cited no authority for the proposition that this Court has the power to invade the secrecy of grand jury proceedings in another district, and the Court has great doubts as to the propriety of such action. However, in view of the recent policy declarations in Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966) regarding production of grand jury transcripts for use by defendants in criminal proceedings, the government should be allowed to seek the permission of the United States District Court for the Northern District of Ohio to release the relevant portions of the grand jury testimony. The policy now favors the release of relevant grand jury testimony in criminal cases over the former policy of secrecy where the reason for secrecy is minimal and the trial requirements of the defendants' case are apparent. In this respect it would appear that defendants make a good case for disclosure in general, but the form of the motion is too broad and indefinite. Furthermore, the government should be permitted to comply with the spirit and purpose of Dennis, supra, so that it may seek the authority of the court where the grand jury testimony was taken, and where the transcripts are controlled, for authority to release the transcripts in accordance with the provisions of Rule 6(e) of the Federal Rules of Criminal Procedure. Since the time for production of such transcripts may not occur until witnesses testify, (see 18 U.S.C. § 3500; Dennis v. United States, 384 U.S. 855, at 871, 86 S.Ct. 1840) it may be necessary for further pretrial proceedings to ascertain what transcripts, or portions of transcripts, are relevant. The Court will hear any further motions by defendants

to give consideration to the material to be produced and the time of its production as a matter of further pretrial conference under the provisions of Rule 17.1 of the Federal Rules of Criminal Procedure. Within this framework the parties should be able to develop a plan for production of transcripts which will protect the rights of the defendants and give the government officials the opportunity to seek the authority required by law for such release. In the meantime the motion for production in its present form will be denied without prejudice to the rights of the defendants to make further motions for production of grand jury transcripts, unless the government makes such material available by agreement.

It is ordered that defendants' motions are, and each of them is hereby denied.