Jack **FINEBERG**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 21286.

United States Court of Appeals
Ninth Circuit.

April 5, 1968.

**418**

Burton Marks, of Marks & Schneider, Beverly Hills, Cal., for appellant.

William Matthew Byrne, Jr., U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Chief, Criminal Division, Stephen D. Miller, Asst. U. S. Atty., Assistant Chief, Special, Prosecutions Division, Los Angeles, Cal., for appellee.

Before CHAMBERS and MERRILL, Circuit Judges, and PLUMMER, District Judge.

PLUMMER, District Judge:

Appellant was convicted by a jury of mail fraud, using a fictitious name to defraud, and wire fraud, in violation of 18 U.S.C.A. §§ 1341, 1342 and 1343. A timely appeal was taken to this court which has jurisdiction under 28 U.S.C.A. §§ 1291, 1294.

The evidence on which appellant was convicted established a series of transactions involving the purchase and resale of phonograph records extending from about June of 1963 to about August 24, 1964. In the course of these transactions, a number of wholesale record distributing companies were defrauded of substantial sums of money.

In furtherance of the scheme devised by appellant, he formed a corporation. Nelson Bureau of Employment, doing business as Merco Sales, to operate the business; placed orders with various wholesale record distributing companies; lulled the companies into a false sense of security by misrepresentations, and by making partial payment; and issued post-dated checks which were not honored when presented for payment, or on which payment was stopped. The scheme was accomplished by appellant through the use of United States mails, a fictitious name, and interstate telephone.

The purpose of appellant's scheme was to obtain large shipments of records from the companies with the intention not to pay for them in full. To prove an intent to defraud, the Government presented evidence which established that the records ordered were sold by appellant below his cost price.

The crimes charged in the indictment required a scheme to defraud. The scheme to defraud necessarily included the intent to do so. It was essential that the Government prove beyond a reasonable doubt that appellant acted with the specific intent to execute or carry out the scheme to defraud as charged in the indictment. To prove intent, the Govern-

ment presented evidence of similar operations and activities conducted by the appellant in Albuquerque, New Mexico between April and August of 1962.

Appellant made timely objection to this evidence on the grounds (1) that there was a fatal difference between the Albuquerque scheme and the Los Angeles scheme in that appellant in his Albuquerque operation did not buy records at one price and sell them below cost price as he did in Los Angeles, and (2) that certain documents pertaining to the sale of records were hearsay, irrelevant, and were not shown to have been sent through the United States mails.

The Albuquerque operation ended in August of 1962 when appellant and his partner suddenly decamped leaving no money or assets with which to pay creditors. In June of 1963, some nine months later, appellant and his associates commenced operations in Los Angeles. The two operations were reasonably related in point of time. The scheme devised by appellant in Albuquerque, with trivial or immaterial differences, was substantially similar to the scheme devised by him in Los Angeles.

Appellant claims that the scheme carried out in Albuquerque was different from the one followed by him in Los Angeles because in the Los Angeles operation records were sold below cost causing the company to go into involuntary bankruptcy, which resulted in creditors being defrauded, whereas in Albuquerque, pursuing a substantially similar scheme, the evidence did not show the price at which the records were sold but established that appellant and his partner left town with the assets and money of the company, and thereby accomplished the same result.

■ This claim is without merit. Whether creditors were actually defrauded in Albuquerque or in Los Angeles is totally immaterial. In a prosecution of this type, the Government is not required to prove that anyone was defrauded or that anyone sustained a loss. Farrell v.

United States, 321 F.2d 409, 419 (9th Cir. 1963); Bobbroff v. United States, 202 F.2d 389 (9th Cir. 1963); United States v. Andreadis, 366 F.2d 423, 431 (2d Cir. 1966).

■ When a defendant is put on trial for one offense, evidence of a distinct offense unconnected with that charged in the indictment is not admissible. Exceptions to this rule are so numerous that it is difficult to determine which is the more extensive, the doctrine or the acknowledged exceptions. Davis v. United States, 370 F.2d 310 (9th Cir. 1966).

■ Among the exceptions recognized by this court is one which permits evidence of wrongful acts where such evidence bears on criminal intent. Davis v. United States, supra, and cases cited therein; Stewart v. United States, 311 F.2d 109, 112 (9th Cir. 1962); Fernandez v. United States, 329 F.2d 899, 908 (9th Cir. 1964); Reid v. United States, 334 F.2d 915, 918 (9th Cir. 1964); Head v. United States, 346 F.2d 194, 197 (9th Cir. 1965); Reed v. United States, 364 F.2d 630, 633 (9th Cir. 1966); Hernandez v. United States, 370 F.2d 171, 173 (9th Cir. 1966); Chandler v. United States, 378 F.2d 906, 908 (9th Cir. 1967); Amsler v. United States, 381 F.2d 37, 52 (9th Cir. 1967).

■ In federal courts, trial judges have a measure of discretion in allowing testimony which discloses the purpose, knowledge or intent of a particular person. Glasser v. United States, 315 U.S. 60, 81, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Hernandez v. United States, supra.

■ The testimony was unquestionably relevant on the issue of intent. Its importance to the Government outweighs by far any possible prejudice to the defendant. Gilbert v. United States, 366 F.2d 923, 951 (9th Cir. 1966); Fernandez v. United States, supra.

■ The court in its instruction properly limited the jury's consideration of the evidence to the issue of appellant's intent. The jury is presumed to have

**420**

understood and followed the court's instructions and to have given proper weight to this evidence. Robison v. United States, 379 F.2d 338, 345 (9th Cir. 1967); Donaldson v. United States, 248 F.2d 364, 365 (9th Cir. 1957). In doing so, it must be presumed that the jury conscientiously observed the *limiting* instructions given by the court. Shotwell Mfg. Co. v. United States, 371 U.S. 341, 367, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963).

It was not error to admit this evidence on the issue of intent.

Appellant also claims that the records of Nelson Bureau of Employment, doing business as Merco Sales, were illegally obtained from him and were used by the Government in violation of his rights under the Fourth and Fifth Amendments to the Constitution of the United States.

Appellant was subpoenaed to appear before the grand jury on February 25, 1965, and was directed to bring these records with him. He refused to do so. Thereafter, he was told on several occasions by the United States Attorney he would be held in contempt of court, put in jail and investigated by the Federal Bureau of Investigation if he continued in his refusal. On March 10, 1965, upon the advice of his attorney and under threat of being sent to jail, the records were produced.

 Nelson Employment Bureau, a corporation, could not claim a privilege of self-incrimination with reference to the corporate books and records. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L. Ed. 652 (1906). Appellant as the sole owner or as an officer of the corporation could not claim the privilege of the Fifth Amendment in connection with the corporation's books and records either for himself or the corporation. Grant v. United States, 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423 (1912); Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); Wild v. Brewer, 329 F.2d 924 (9th Cir. 1964), cert. den. 379 U.S. 914, 85 S.Ct. 262, 13 L.Ed.2d 185; United States v. Owens-Corning Fiberglas Corporation, 271 F.Supp. 561, 567 (N.D. Cal.1967); Cf. Hill v. United States, 374 F.2d 871, 873 (9th Cir. 1967).

 The production of the corporate records by appellant under these circumstances was not a violation of his Constitutional rights.

Appellant *figured* he could survive in the record business and make a profit by starting at the bottom, paying his bills promptly, operating in a business-like manner, and thus eventually becoming entitled to credit. He *presumed* that as his volume increased his credit line would increase in amount and time. He *believed* his increased volume would result in greater discounts and promotional allowances. He *anticipated* it would require a year and a half to two years to show a profit. He asserts that had he been given credit terms and extra discounts given to other large users, he wouldn't have been forced into involuntary bankruptcy.

Appellant claims that the court erroneously excluded expert tsetimony concerning the feasibility of his business plans and thereby prevented him from presenting evidence establishing his good faith and negating an intent to defraud.

To establish the reasonableness of his plans, he offered as a witness Joseph Segal, a certified public accountant. Except for having gone through some records, Mr. Segal had no knowledge about the business relationships or contracts between Merco Sales and anyone else during 1963 and 1964. He proposed to testify that regardless of the starting capital, a person in the record business could operate at a loss for a period of time and survive in business if he was buying enough, and provided he moved enough merchandise on an increasing scale. He could even sell at a loss, provided the volume of increase and terms of payment allowed him to do so. What he would be doing would be kiting money, using the suppliers' money and terms of credit to pay off the old suppliers.

This would be a very dangerous game, but it could be done. Mr. Segal knew of no distributors who had done this during 1963 and 1964. He did know of two persons in 1963 and 1964 who bought records from a distributor and in turn sold them to a rack jobber, but he had no knowledge about their starting capital or the prices they paid for records.

To warrant the use of expert testimony, two elements are required. First, the subject of the inference must be so distinctly related to some science, profession, business or occupation as to be beyond the knowledge of the average layman, and second, the witness must have such knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth. Jenkins v. United States, 113 U.S.App. D.C. 300, 307 F.2d 637, 641–643 (1962).

The probability or possibility of the success of appellant's scheme required no special study, training or skill and was not the subject of expert testimony. Although Mr. Segal was a certified public accountant, there was no evidence showing that he was specially qualified to give an opinion that would have been of any assistance to the jury. The members of the jury, from their own observations and experiences in the affairs of life, were capable of reaching the conclusion that if appellant had been given greater credit, discounts and promotional allowances, and if, in his "kiting" manipulations, he had been able to keep one jump ahead of his creditors, he might have remained in business—but it would have been a dangerous game.

The admissibility of expert testimony is a subject peculiarly within the sound discretion of the trial judge, who alone must decide the qualifications of the expert on a given subject and the extent to which his opinions may be required. Formhals v. United States, 278 F.2d 43, 47 (9th Cir. 1960); Lelles v. United States, 241 F.2d 21, 26 (9th Cir. 1957), cert. den. 353 U.S. 974, 77 S.Ct.

1059, 1 L.Ed.2d 1136. We hold that the discretion of the trial judge was exercised soundly and judiciously in this case.

Judgment affirmed.