**UNITED STATES of America**

v.

**Theodore Jack POTASH and Robert J. Quigley, Defendants.**

**No. 71 Cr. 763.**

United States District Court,
S. D. New York.

Oct. 8, 1971.

Whitney North Seymour, Jr., U.S. Atty., S. D. N. Y., New York City, for

the United States; Walter M. Phillips, Jr., Asst. U. S. Atty., of counsel.

Otto G. Obermaier, New York City, for defendant Quigley.

Martin Stewart, Mineola, N. Y., for defendant Potash.

## OPINION

EDWARD WEINFELD, District Judge.

The defendants, Ted Potash and Robert J. Quigley, are named in two counts of an indictment. The charges are (1) conspiracy to cause the transportation in foreign commerce of stolen securities having a value of more than $5,000, and (2) a substantive violation of 18 U.S.C. sections 2314 and 2, in causing the transportation in foreign commerce between Montreal and New York of such stolen securities, consisting of municipal bonds of the approximate value of $53,848.12. The indictment alleges that the conspirators included others to the grand jury "known and unknown." The government has served a bill of particulars naming John Gallagher Brown as a known conspirator.

Brown was indicted in December 1967 as the sole defendant charged with a violation of section 2314 of Title 18 with respect to the bonds specified in the instant indictment. After a trial to a jury, he was found guilty in April 1971. Thereafter, on July 13, 1971, the indictment against Potash and Quigley was returned.

The defendant Quigley moves to dismiss the indictment upon various grounds. First, he contends that his right against self-incrimination and to counsel under the Fifth and Sixth Amendments were violated when he was subpoenaed to appear before the grand jury without being informed that he was a potential defendant. The government denies that Quigley was a potential defendant when he was subpoenaed; the prosecutor swears that the government had not then decided he would be a defendant, although he acknowledges Quigley's involvement with the securities was not althogether unknown to the government, in view of his testimony at Brown's trial, his statement to the FBI, and another to the government. The prosecutor asserts that the purpose in calling Quigley to testify before the grand jury was to ascertain the truth regarding the stolen bonds and the circumstances surrounding their attempted negotiation in Montreal and other places. Specifically, the prosecutor states it was not the government's intention to obtain a preview of Quigley's defense, nor to elicit testimony to be used for his cross-examination upon a trial.

 Upon the papers here presented, there is no adequate support for the defendant's charge that he was deliberately subpoenaed in violation of his constitutional right not to "be compelled in any criminal case to be a witness against himself." The fact that an investigation discloses that one may have knowledge of the subject matter under inquiry does not preclude the prosecution from summoning him before the grand jury to testify as to matters under inquiry. And even if the inquiry should point in the direction of the witness so that he has become the target of inquiry, the prosecution is not foreclosed from calling him before the grand jury in "an effort to glean some small harvest of information from [him, even though he may be] suspected of being involved",[1] provided he is advised of his constitutional rights. Quigley was not only advised of his constitutional rights against self-incrimination and to counsel, but in addition, although not in custody and the *Miranda* rule was inapplicable in the circumstances of this case,[2] nonetheless he was given

1. United States v. Corallo, 413 F.2d 1306, 1328 (2d Cir.), cert. denied, 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 422 (1969); United States v. Winter, 348 F.2d 204, 207 (2d Cir.), cert. denied, 382 U.S. 955, 86 S.Ct. 429, 15 L.Ed.2d 360 (1965).

2. United States v. Corallo, 413 F.2d 1306, 1330 (2d Cir.), cert. denied, 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 422 (1969).

the substance of *Miranda* safeguards.[3] Entirely apart from the fact he was fully advised of his constitutional rights, Quigley was not unaware of the thrust of the inquiry and that it centered about him, as well as others. He is a bank official with considerable experience; he is knowledgeable and a man of affairs.[4] He was aware, when summoned to testify before the grand jury, that the scope of the inquiry would touch upon his role with respect to the bonds, as to which he had testified at Brown's trial as a defense witness. Having been fully and adequately advised of his right against self-incrimination and his right to consult counsel, and having been given the substance of the *Miranda* warnings, it was not additionally required as a matter of constitutional right that he be specifically advised he was the target of inquiry and that the grand jury might return an indictment against him.[5] His appearance before the grand jury afforded him the opportunity to exonerate himself, and by his testimony he availed himself of that opportunity when he knew he was free to refuse to answer upon constitutional grounds. Having decided to tell his story, he cannot now complain of his failure to assert his privilege to remain silent;[6] that the grand jury did not accept his version resulted in no impairment of his constitutional rights. So, too, having decided to proceed without counsel, after being advised of his right in this regard, he cannot now contend he was deprived of that right.

The next ground urged for dismissal is based upon defense counsel's belief that it is "the consistent practice in this District, and to have occurred in this case, that the attorney for the govern-

3. "Q Mr. Quigley, my name is Walter Phillips. I'm an Assistant United States Attorney. This Grand Jury is investigating possible violations of Title 18, United States Code, Section 2314, which relates to the interstate transportation of stolen property. Now I'm going to ask you certain questions. If you believe that the answers to any of these questions may tend to incriminate you, you have an absolute right under the Fifth Amendment to refuse to answer those questions. You have a right to have an attorney outside of the Grand Jury room, and to consult with that attorney prior to answering any of my questions. If you cannot afford an attorney, you have the right to have an attorney appointed free of charge, to remain outside the Grand Jury room, and you may consult with him prior to answering any of my questions. In neither event is the attorney permitted inside the Grand Jury room. Anything you say is being taken down by the stenographer, and can be used against you at a later time. You may stop answering my questions at any time you wish. Do you understand everything I've said?
"A Yes."

4. *United States v. Kimball*, 117 F. 156, 166 (S.D.N.Y.1902). *See also* United States v. Owens-Corning Fiberglas Corp., 271 F.Supp. 561 (N.D.Cal.1967). The issue here presented as to whether it is constitutionally required that a witness summoned before a grand jury, who is a potential defendant, be so informed was noted but not passed upon in United States v. Winter, 348 F.2d 204, 208 (2d Cir. 1965), cert. denied, 382 U.S. 955, 86 S.Ct. 429, 15 L.Ed.2d 360 (1966) with a footnote reference to United States v. Edgerton, 80 F. 374 (D.Mont.1897). In the latter case, the court stated "[i]t [was] fatal to the indictments that the defendant was called to testify in the particular matter from which they resulted, without being informed *or knowing* that his own conduct was the subject under investigation" [italics supplied] at 375. In United States v. Kimball, 117 F. 156 (S.D.N.Y.1902), the court distinguished *Edgerton* by stating that "[i]n the Edgerton Case it is inferable that the witness had no knowledge, nor was he warned, that the investigation related to him" at 167. These and subsequent cases, *see, e. g.,* United States v. Owens-Corning Fiberglas Corp., 271 F.Supp. 561 (N.D.Cal.1967), apply a factual rather than a formal test as to whether a potential defendant is advised of that status prior to being questioned before the grand jury.

5. *Cf.* United States v. Owens-Corning Fiberglas Corp., 271 F.Supp. 561, 566 (N.D.Cal.1967) ; United States v. Kimball, 117 F. 156 (S.D.N.Y.1902).

6. United States v. Capaldo, 402 F.2d 821, 824 (2d Cir. 1968), cert. denied, 394 U.S. 989, 89 S.Ct. 1476, 22 L.Ed.2d 764 (1969).

ment who presented the case to the grand jury made *ex parte*, unsworn statements to the grand jury" which were not recorded. Counsel further postulates that since Quigley and Brown gave conflicting testimony before the grand jury, credibility was a major issue, and that "it is believed that some of these statements [by the prosecutor] concerned this issue" of credibility, and consequently such "statements may have rendered the grand jury biased either for the government or against the defendant." These allegations of "belief" as to what transpired in the grand jury proceeding are without evidential support, and a hearing is sought "to determine the nature of the statements made in order to insure that the procedures before the grand jury were proper."

■ To grant this motion for dismissal or for a hearing upon the speculative allegations referred to above would forge a new device for the delay of trials and open the flood gates of litigation. Instead of the defendant being brought to trial promptly, the prosecutor would be put on trial with respect to his presentation before the grand jury. Also, as noted by my colleague, Judge Frederick Van Pelt Bryan, when a similar motion was made, to grant it would "call into question the validity of large numbers of indictments pending"[7] in this court. Since nothing of substance has been presented to impugn the presumption of the regularity of the grand jury proceedings, the motion is denied.

■ Finally, the defendant seeks dismissal of the conspiracy count under Rule 12(b) of the Federal Rules of Criminal Procedure upon the ground that it fails to state an offense. As first presented, this branch of the motion is based upon a contention that the indictment fails to allege the commission of an overt act by one of the named co-conspirators, an essential element of the crime of conspiracy as defined in 18 U.S.C. section 371. The indictment alleges the commission of two overt acts by John Gallagher Brown, who was not identified in the indictment as a co-conspirator. However, as already noted, the indictment alleges that in addition to Quigley and Potash, there were other conspirators, to the grand jury "known and unknown." Thus, the indictment, amplified by the bill of particulars, identifying Brown as one of the "known" conspirators, alleges the commission of an overt act by a conspirator, and sufficiently alleges the crime of conspiracy under section 371 of Title 18. It meets the criteria by which the sufficiency of an indictment is tested—it adequately apprises the defendants of the charges which will enable them to prepare their defense and to plead double jeopardy in the event of a subsequent prosecution.[8]

■ Since the original motion, the defendant has expanded it, contending that there is a "substantial possibility that there is insufficient evidence before the grand jury to support the charges made in the indictment." But the grand jury was only required to be satisfied that probable cause existed to believe the defendants committed the crime charged.[9] The movant presses, however, that the government was required to establish that Brown, as a conspirator, knew that the bonds transported from New York to Montreal were stolen, and since, upon his trial and thereafter, he repeatedly denied he knew of their illicit nature, there was no basis upon which the grand jury could have found that he was a knowing participant in the conspiracy. But the grand jury was not required to accept his denials or exculpatory assertions, or, for that matter, those of Quigley.[10] More important, Brown

7. United States v. Messitte, 324 F.Supp. 334, 337 (S.D.N.Y.1971).

8. Wong Tai v. United States, 273 U.S. 77, 80, 47 S.Ct. 300, 71 L.Ed. 545 (1927). *See also* United States v. Pope, 189 F. Supp. 12, 16–17 (S.D.N.Y.1960).

9. United States v. Braico, 422 F.2d 543, 545 (7th Cir.), cert. denied, 398 U.S. 912, 90 S.Ct. 1712, 26 L.Ed.2d 74 (1970).

10. Dyer v. MacDougall, 201 F.2d 265 (2d Cir. 1952).

had acknowledged before the grand jury his conviction under section 2314 of Title 18, United States Code, an essential element of which was knowledge of the illicit nature of the transported bonds—the very bonds specified in the instant indictment. As to Brown, the judgment of conviction is conclusive on this issue, notwithstanding Brown's contradictory assertion.[11] Moreover, the court has read the grand jury minutes, and the evidence presented was sufficient to warrant the conspiracy charge and that Brown was a knowing participant therein.

The respective motions made by the defendant Quigley are denied.

The defendant Potash moves to dismiss the indictment on the ground that his right to a speedy trial as guaranteed under the Sixth Amendment was violated by pre-indictment delay.

■ The indictment against him was returned approximately three years and seven months after the commission of the alleged offenses charged in the indictment. As to this pre-indictment delay, the government asserts that the first knowledge it had that Potash might be implicated was when Brown testified at his trial in April 1971; that a prompt investigation was instituted and the matter expeditiously presented to the grand jury, which returned the indictment within three months. Under the circumstances, there can be no valid claim that the pre-indictment delay in any way was due to any purposeful act or design on the part of the government.[12] The prosecution moved with dispatch when the possible criminal implication of others was disclosed at Brown's trial, and

thereafter the indictment was returned well within the limitation period, "which is usually considered the primary guarantee against bringing overly stale criminal charges."[13]

■ Potash, however, alleges a denial of his right to due process under the Fifth Amendment upon a claim that the pre-indictment delay has impaired the effectiveness of his defense because of the unavailability at his trial of the testimony of two alleged witnesses, one whose whereabouts is allegedly now unknown, and the other deceased. A reading of the affidavit submitted to support this claim reveals it is without substance.

Upon his trial, Brown testified that pursuant to a previous arrangement Potash appeared at Kennedy Airport with a man named "Charlie", who then accompanied Brown from New York to Montreal with the bonds. Potash's attorney, without the slightest evidentiary support, states that "Charlie" remained within the jurisdiction of the court for approximately eight months after Brown's arrest, and that "Charlie's" whereabouts and true identity are now unknown; that had the prosecution not been delayed, "it would have been possible to apprehend 'Charlie'. Such apprehension of 'Charlie' would have, in all probability, revealed the entire scheme between BROWN and 'Charlie' and absolved the defendant, POTASH, of any guilt." The attorney does not state that he knew or ever saw "Charlie", the source of his information, nor the basis of "the probability" that "Charlie" would have absolved his client of any guilt—and significantly nothing is stated as to what, if anything, "Charlie" would testify to that would exonerate de-

11. Cf. Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); Mahoney v. United States, 137 U.S.App. D.C. 3, 420 F.2d 253 (1969); United States v. Kramer, 289 F.2d 909 (2d Cir. 1961).

12. Chapman v. United States, 376 F.2d 705 (2d Cir.), cert. denied, 389 U.S. 881, 88 S.Ct. 119, 19 L.Ed.2d 174 (1967).

13. United States v. Ewell, 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966); United States v. Parrott, 425 F.2d 972, 976 (2d Cir. 1970); United States v. Feinberg, 383 F.2d 60, 64 (2d Cir. 1967), cert. denied, 389 U.S. 1044, 88 S.Ct. 788, 19 L.Ed.2d 836 (1968).

fendant.[14] Counsel's very assertions expose the speciousness of this claim of prejudicial delay.

With respect to the other purported witness, Thomas Slatter, allegedly now deceased, an affidavit is submitted by one Mario Campione, who describes himself as a chauffeur for both defendant and his father, who are in the produce business. Campione is without knowledge of any facts relating to the matters at issue. However, he recalls a conversation with the deceased Slatter that allegedly took place some time in December 1967 or January 1968, when he and the defendant Potash were at the bank at which Slatter and Quigley were then both employed. According to Campione, Slatter told him and Potash that Brown had tried to get a loan on some bonds; that Slatter stated he felt something was wrong and referred Brown to Quigley; that later, when Brown was arrested, he called Slatter and told him that he, Brown, was stupid. During the course of that conversation, Slatter allegedly told [15] Campione and Potash that Brown had tried to get Quigley and Potash to buy the bonds or give him a loan, but both refused; that Brown needed money and took a chance in going to Canada with a fellow who had given him the bonds in an effort to sell them or to obtain a loan. In sum, the claim appears to be that Slatter was told by Brown that he was criminally involved but that Quigley and Potash, the defendants herein, were not, and were Slatter alive, he would so testify.

Apart from the question of the admissibility of Slatter's testimony of what Brown allegedly told him following his arrest, its evidential value is slight, even were it to be received in evidence.[16] It is not claimed that Slatter had any part in the transaction or any direct knowledge of the events relating to the bonds, or the roles allegedly played with respect thereto by Brown, Potash and Quigley. On the other hand, those witnesses who are possessed of primary knowledge are all available to testify at the trial. It is anticipated that Brown will be called as a government witness; in that event, he is subject to cross-examination. Quigley and Potash are free to testify or to exercise their constitutional privilege against self-incrimination. All three are the persons who have knowledge of the facts. A close study of Campione's affidavit suggests that it is an attempt to create a post mortem alibi by casting a deceased person into an exculpatory role based upon the adage, "dead men tell no tales." [17]

■■■ Any contention based upon post-indictment delay is entirely without substance. Not only has the defendant waived any claim because of failure to move for a speedy trial,[18] but the fact is that the case has been moved for trial with speed. It is scheduled for trial on October 12, three months after the return of the indictment, and counsel for

14. See United States v. Research Foundation, Inc., 155 F.Supp. 650, 655 (S.D.N.Y. 1957).

15. It is unclear from Campione's affidavit whether this portion of the alleged conversation that follows is what Slatter is relating what Brown said during the course of the telephone conversation following his arrest, or what Slatter himself said independently of what Brown said during the course of the telephone talk.

16. Its value and admissibility would be limited to the impeachment at trial of Brown, who, it appears, will be a witness for the government. United States v. Browne, 313 F.2d 197 (2d Cir.), cert.

denied, 374 U.S. 814, 83 S.Ct. 1707, 10 L.Ed.2d 1037 (1963). Cf. Williams v. United States, 394 F.2d 821, 822 (5th Cir.), cert. denied, 393 U.S. 890, 89 S.Ct. 211, 21 L.Ed.2d 169 (1968); United States v. Barash, 365 F.2d 395, 401 (2d Cir. 1965) (subsequent history as to other matters omitted).

17. United States v. Research Foundation, Inc., 155 F.Supp. 650, 655 (S.D.N.Y. 1957).

18. See United States v. Lustman, 285 F.2d 475 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958).

the government and the defendants have been directed to proceed on that day.

The defendant's application, tested by the criteria set down in our circuit,[19] must be denied.

19. United States v. DeMasi, 445 F.2d 251, 255 (2d Cir. 1971); United States v. Feinberg, 383 F.2d 60 (2d Cir. 1967), cert. denied, 389 U.S. 1044, 88 S.Ct. 788, 19 L.Ed.2d 836 (1968); Chapman v. United States, 376 F.2d 705 (2d Cir.), cert. denied, 389 U.S. 881, 88 S.Ct. 119, 19 L.Ed.2d 174 (1967).